**Herman L. MARSHALL, Plaintiff,**

v.

**J.W. FAIRMAN, C/O Galtney, C/O Dooley, Sgt. Brown, and Superintendent Drahos, Defendants.**

**No. 96 C 467.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 2, 1997.

Herman Marshall, Galesburg, IL, pro se.

Terry L. McDonald, David S. Meyerson, Cook County State's Atty., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

This is a *pro se* civil rights action brought by Herman L. Marshall under 42 U.S.C. § 1983 against executives and officers of the Cook County Department of Corrections, which operates the Cook County Jail. He alleges that while incarcerated in the Jail, presumably as a pretrial detainee, he was assaulted and wrongfully disciplined. Certain of the defendants have moved to dismiss the complaint on the ground that it does not state a claim as to them.

Marshall alleges that on November 25, 1995, while he was an inmate in the Jail, Correctional Officer Galtney falsely told Sergeant Brown (presumably her supervisor), that a group of inmates were inciting prisoners on Tier 1–E to riot. Brown came to Tier 1–E with a Lieutenant Salazar and other officers. Salazar asked Galtney "who was talking," i.e., planning a disturbance, and she named five inmates including Marshall. These inmates were told to pack their personal property because they were going to be taken to segregation pending a hearing. After they did so, they were taken out into the hallway. Brown told them to put their mattresses and property down and face the wall with their hands up and their legs spread apart. Marshall and the others complied.

Marshall alleges at this point he was beaten and kicked by a correctional officer named Dooley while Sergeant Brown looked on and did nothing to stop the assault. Dooley told him to hit back, but he did not do so. Dooley pulled him away from the wall and slapped Marshall's left ear. Finally Salazar told Dooley to stop and "walk it off." Marshall's property was stepped on and the correctional officers gave away his food and tobacco worth $17 to "division 5 hallway workers."

Marshall received medical attention the next day, but only after family members called Brown.

On December 20, 1995, Marshall and the other accused inmates were taken to the office of Superintendent Drahos. There Marshall denied telling other prisoners not to lock up and denied that there was a riot or "gang activity." Marshall asked that witnesses be called, but states that he "was denied by the board." Marshall was found guilty and given twenty days in segregation. He has sued Dooley, Brown, Galtney, Drahos and J.W. Fairman, who at that time was the Director of the Cook County Department of Corrections. Fairman, Drahos and Galtney have moved to dismiss the complaint as to them.[1]

A motion to dismiss should not be granted unless the court concludes that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). In deciding a motion to dismiss, the court must not only assume that the alleged facts are true, the court must draw every reasonable inference in the plaintiff's favor. *Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir.1992). Complaints filed *pro se* are held to less stringent standards than pleadings drafted by attorneys, and are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir.1996).

█ The defendants first contend that the complaint should be construed as only alleging claims against the defendants in their official capacities, since the complaint does not specify whether the defendants are sued in their individual or official capacities. While it is true that the Seventh Circuit in *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir.1990), gave this as a general rule of construction, this is not an inflexible rule of law and is the sort of technical requirement that should not be applied to a *pro se* complaint. It is reasonably clear that Marshall is not alleging any formal or informal policy of the Cook County Department of Corrections and that the defendants are sued in their individual capacities only.

█ Defendants next assert that Marshall's claims against Drahos and Fairman assert a theory of *respondeat superior*, a theory inapplicable to claims under § 1983. Liability under § 1983 requires personal involvement; the defendant must have acted or failed to act with a deliberate or reckless disregard of the plaintiff's constitutional rights, or others' actions violating the plaintiff's rights must have occurred at his direction or with his knowledge and consent. *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994).

█ Defendants are certainly correct as to Fairman. Marshall does not allege that Fairman even knew of the events described in the complaint, but states that "I fault J.S. Fairman who is the Director of C.C.D.O.C. because he has sole responsibility for all action on behalf of his staff." Marshall makes similar allegations as to Drahos: "[Drahos] is responsible for the welfare and security of all inmates in division five which this incident took place based on his negligence I was a victim of a beating...." While this goes beyond *respondeat superior* and also alleges actual fault on Drahos' part, that fault is only negligence. Negligent action that results in injury is not a violation of the Due Process Clause and hence not actionable under § 1983. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). It would be a different matter if Drahos had been on notice that his staff had been abusing prisoners and had turned a blind eye, but this has not been alleged.

█ In his role as supervisor of his staff, therefore, Drahos is not liable. The complaint hints at another role for Drahos: it alleges that when the accused inmates were interrogated by Drahos in his office, Mar-

---

1. Defendants Dooley and Brown have not yet been served with process, a matter that is addressed by separate order issued this date.

shall asked that witnesses be called, but the request "was denied by the board." It is unclear whether Drahos played a part in the administrative hearing that resulted in Marshall's being confined in disciplinary segregation; did "the board" include Drahos? If it did, there could be liability on that account, as discussed further below. Nevertheless, because his participation is not alleged in the complaint, Drahos will also be dismissed.

■ The defendants are also correct that Marshall has not stated a claim against them with respect to his confiscated property. A state may not take a person's property without due process of law, but if the plaintiff has an adequate remedy under state law there is no constitutional violation if the taking has been a random, unauthorized act by a state employee. As Illinois does provide an adequate remedy through the Illinois Court of Claims, Marshall has no claim under § 1983. *Stewart v. McGinnis*, 5 F.3d 1031, 1035–36 (7th Cir.1993), cert. denied, 510 U.S. 1121, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994).

■ Marshall's complaint against Officer Galtney is that she made up the accusations against him that resulted in his discipline. Before addressing her possible liability, two red herrings must be addressed. First is defendants' contention that Marshall had no liberty interest in not being placed in segregation. Defendants are correct that Marshall had no protected liberty interest in being housed in any particular part of the Jail. That is beside the point; Marshall had a protected liberty interest in not being punished. As a pretrial detainee, Marshall could not be punished except in accordance with due process of law. This right did not arise from any guarantees of state or county regulation; it is a requirement of the Constitution itself. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979); *Antonelli*, 81 F.3d at 1427–28. Nothing in the complaint suggests that Marshall was placed in segregation for any reason other than punishment, so cases such as *Pardo v. Hosier*, 946 F.2d 1278 (7th Cir.1991), holding that prisoners have no right not to be segregated from the general population for non-punitive reasons, are inapplicable.

■ Second, defendants contend that because Marshall did not allege that conditions in disciplinary segregation were worse than those prevailing generally in the Jail, he has not alleged that he has been punished. They go so far as to suggest that "[s]egregated confinement at [the Jail] may in fact be preferable to the overcrowded conditions of general population in the various divisions of the jail." Def. Br. at 13. However, in ruling on a motion to dismiss the court is required to draw all reasonable inferences in Marshall's favor. It is reasonable to infer that if a prisoner is put somewhere as a punishment, it will be a distinctly less pleasant place to be. The court has to assume some degree of rationality on the part of the Jail's administrators. The defendants are welcome to prove at trial, or in a motion for summary judgment, that as a consequence of planning a disturbance Marshall was placed in equally comfortable quarters and therefore suffered no injury. It will not be assumed in deciding a motion to dismiss.

■ Although acknowledging that the Supreme Court's decision in *Sandin v. Conner*, — U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), is inapplicable to pretrial detainees, defendants suggest that the opinion "lays the groundwork" for rethinking the legal standard applicable to the disciplinary punishment of pretrial detainees. Def. Br. at 15. But the inapplicability of *Sandin* is not a mere formality. *Sandin's* holding, that state law cannot create a liberty interest in avoiding periods of confinement in disciplinary segregation under conditions comparable to administrative segregation or protective custody, is premised upon the state's power to punish incarcerated prisoners:

> The punishment of incarcerated prisoners ... serves different aims than those found invalid in *Bell* [involving pretrial detainees] and *Ingraham [v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)] [addressing schoolchildren's right of freedom from arbitrary corporal punishment]. The process does not impose retribution in lieu of a valid conviction.... It effectuates prison management and prisoner rehabilitative goals. See *State v. Alvey*, 67 Haw. 49, 55, 678 P.2d 5, 9 (1984). Ad-

mittedly, prisoners do not shed all constitutional rights at the prison gate, *Wolff*, 418 U.S. at 555 [94 S.Ct. at 2974], but "'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Jones [v. North Carolina Prisoners' Labor Union]*, 433 U.S. [119] at 125 [97 S.Ct. 2532, 2537, 53 L.Ed.2d 629 (1977)] quoting *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049 [1060], 92 L.Ed. 1356 (1948). Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law. *Sandin*, ⸺ U.S. at ⸺, 115 S.Ct. at 2301. These considerations are inapplicable to pretrial detainees who may not be punished without due process of law, regardless of state regulations. *Whitford v. Boglino*, 63 F.3d 527, 531 n. 4 (7th Cir.1995).

■ *Sandin* can be read as holding that if conditions imposed by the state in punishing a prisoner are not substantially worse than the conditions it might have imposed for non-punitive reasons, the prisoner has not suffered a constitutionally cognizable injury. Just as there is no right not to be transferred to a less restrictive prison, *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976), a convict sentenced to prison assumes the risk that he may arbitrarily be given the worst the prison system has to offer, short of cruel and unusual punishment. *See Leslie v. Doyle*, 896 F.Supp. 771, 774 (N.D.Ill.1995) (Shadur, J.). But this court will not extend this reading of *Sandin* to pretrial detention and hold that *before conviction* a prisoner may be subjected to arbitrary punishment at the whim of his jailers.

■ Having resolved the question of Marshall's liberty interest in avoiding a term in disciplinary segregation, the question remains whether Officer Galtney can be liable for bringing it about. There is, of course, no constitutional violation in depriving Marshall of a protected liberty interest if Marshall received due process of law. Galtney is correct that *if* the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94

S.Ct. 2963, 41 L.Ed.2d 935 (1974), and its successors had been provided, Marshall has no claim against her for fabricating the disciplinary charge. *Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir.1984). But Marshall alleges that he asked that witnesses be called to confirm his account, and his request was refused. Prisoners facing disciplinary charges have the right to call witnesses unless it would unduly jeopardize institutional safety or correctional goals. *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979–80; *Black*, 22 F.3d at 1402 n. 9. While these considerations may limit a prisoner's right to witnesses' testimony, the defendant has the burden of justifying the limitation, either at the hearing or later in court. *See Ponte v. Real*, 471 U.S. 491, 497–99, 105 S.Ct. 2192, 2196–97, 85 L.Ed.2d 553 (1985). Because Marshall alleges that his disciplinary hearing did not comport with due process of law, that hearing does not shield Galtney from being required to answer in this court.

■ Defendants raise a general claim of qualified immunity, but immunity is clearly inapplicable. Under the doctrine of qualified immunity, public officials performing discretionary functions are protected against civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Formigoni*, 42 F.3d 1060, 1064 (7th Cir.1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Here, any reasonable correctional officer would have known in 1995 that fabricating a disciplinary charge would violate a pretrial detainee's constitutional rights if it resulted in his being deprived of a liberty interest without due process of law. *Hanrahan* did not hold that a prisoner had no right not to be falsely and maliciously accused; *Hanrahan* held only that if the accusation was upheld by a disciplinary hearing meeting the requirements of due process, a federal court would not reweigh the result of the hearing if it was supported by evidence. *Hanrahan*, 747 F.2d at 1141.

The court accordingly grants the defendants' motion to dismiss as to defendants Fairman and Drahos, and dismisses all

claims arising out of the loss of Marshall's personal property. The motion is denied as to defendant Galtney, who must now answer the complaint within thirty days of this order. In addition, the court appoints Frederick F. Cohn, 205 W. Wacker Dr., Suite 1515, Chicago, IL 60606 (312) 641–0692 to represent plaintiff in this matter. The clerk is directed to send Mr. Cohn a copy of the complaint, the docket sheet, and the orders entered by the court to date. This matter is set for a report on status on February 13, 1956, at 9:00 a.m.