**Martin RUSSO, Plaintiff,**

v.

**Lanel PALMER, et al., Defendants.**

**No. 97 C 1969.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 27, 1998.

John Murphy, Federal Defender Program, Chicago, IL, for Plaintiff.

Angela Coumas, Attorney General's Office, Susan Takata O'Leary, Illinois Dept. of Corrections, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This cause is before the Court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

The motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff Martin Russo is an inmate incarcerated at the Joliet Correctional Center. On March 10, 1997, Russo filed a grievance with Correctional Counselor Linwood Johnson complaining of an attack. The attack allegedly left Russo unconscious, with stitches near his right eye and upper lip, possibly a broken nose and tailbone, and bruises and lacerations throughout his body. Russo complained that a national "hit" was ordered against him; thus, his life was in danger. He sought a transfer to a non-maximum prison following his release from segregation. Russo also complained that he did not receive proper medical treatment for his allegedly broken nose and tailbone; he requested proper medical attention.

On March 14, 1997, Counselor Johnson responded in writing by noting that he forwarded a copy of the grievance to Internal Affairs; he also suggested that after release from segregation Russo should sign into protective custody.

On March 20, 1997, Russo filed a complaint in this court premised on a violation of his constitutional rights under 42 U.S.C. § 1983. He claimed that his Eighth Amendment right to be free from cruel and unusual punishment was unconstitutionally infringed because he was denied proper medical care for his allegedly broken nose and tailbone. He sought equitable or injunctive relief—a transfer to a different prison and the restoration of his "good-time"—and monetary relief.

The defendants filed a motion seeking judgment in their favor. First, they argued that the court lacked the authority to hear this matter because Russo neglected to *completely* utilize the prison grievance system— according to defendants, he never pursued the grievance beyond the first step of filing it with Counselor Johnson—and pursuant to recently amended 42 U.S.C. § 1997e(a): "No action *shall* be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[1] Second, defen-

---

1. Both parties agree that complaining about improper medical care qualifies as an action "brought with respect to prison conditions" such that § 1997e(a) is applicable.

dants argued that Russo received proper and adequate medical attention; thus, his claim was frivolous.

In response to defendants' argument that he failed to exhaust administrative remedies, Russo filed an affidavit stating that he tried to complete the second step—filing the grievance with grievance Officer Debra Wilson—but every time that he mailed it to Officer Wilson the grievance was returned to him unsigned and unfiled. Thus, Russo inquired: how could he be "punished" pursuant to § 1997e(a) when he made a "good faith" attempt to complete the grievance process but, whether intentionally or negligently, the prison system prevented him from getting through the second step? [2]

To figure out what happened here, the court held a hearing. The court heard testimony from Russo, Counselor Johnson, Officer Wilson, and Christopher Young—Russo's cell mate.

The court will analyze this matter in two parts. The first part will concern the court's factual findings at the hearing and its interpretation of § 1997e(a). The second part will address defendants' argument regarding the validity of Russo's Eighth Amendment claim premised on inadequate medical care claim.

## II. DISCUSSION/ANALYSIS

### A. Factual Findings and 42 U.S.C. § 1997e(a)

#### 1. Findings of fact

It is undisputed that Russo was well aware of the grievance process—he knew that the second step in the grievance process was to file the grievance with Officer Wilson. He filed grievances in the past and the grievance process is explained on the form that stated his initial complaint to Counselor Johnson. Thus, any failure to file the grievance with Officer Wilson cannot be attributed to ignorance of the grievance process.

The court finds the testimony of Counselor Johnson and Officer Wilson highly credible. Officer Wilson maintained a log regarding grievances filed with her. The log listed the name of the individual filing the grievance, the date it was filed, and a brief description of the reason for filing the grievance. The log regarding the period of February 1997 to October 1997 contained two listings attributable to Russo. Neither of those grievances, however, concerned the basis of the instant lawsuit—improper medical care. According to her testimony, Officer Wilson never received a grievance from Russo regarding the instant issue.

Counselor Johnson was Russo's counselor. He received the initial complaint—the first step in the grievance process—from Russo regarding the instant dispute. He passed it on to Internal Affairs. Counselor Johnson walked the segregation unit once a week to talk to the inmates. He maintained summary notes of his discussions with the inmates. The notes indicate that he first spoke with Russo in January 1996 and last spoke with him in November 1997. In the interim, Counselor Johnson met with Russo a considerable amount of times; nowhere, however, do the notes indicate a discussion with Russo regarding his inability to forward the grievance to Officer Wilson.

The court does not find the testimony of Russo or his cellmate Young credible.

The court finds that Officer Wilson never received the grievance from Russo. Based on the testimony of Counselor Johnson, the court finds that Russo never attempted to mail the grievance to Officer Wilson. If Russo was having problems with the prison mail system, the court finds that he would have discussed the issue with Counselor Johnson—Russo spoke to Counselor Johnson numerous times regarding a variety of issues. Neither Counselor Johnson's notes nor his memory indicate a discussion with Russo regarding the inability to forward the grievance to Officer Wilson.[3] Accordingly, the court concludes that Russo never attempted to forward his grievance to Officer Wilson.

---

**2.** The court speculates that if Russo attempted to complete the grievance process but through no fault of his own was "prevented" from pursuing his grievance at each step of the process, the court could "overlook" § 1997e(a)'s prohibition against bringing this action in federal court.

**3.** The court does not find Russo and Young's testimony to the contrary credible.

### 2. 42 U.S.C. § 1997e(a)

Pursuant to 42 U.S.C. § 1997e(a):

No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted.

As both parties concede, bringing an action based on improper medical care is a claim "brought with respect to prison conditions;" thus, § 1997e(a) is applicable.

As both parties also agree, the first step in the prison grievance system is the initial complaint filed with the grievance counselor and the second step is to file the grievance with the grievance officer. *See* 20 Ill.Admin.Code § 504.810. Here, Russo completed the first step—he filed the initial complaint with Counselor Johnson. Russo, however, failed to complete the second step—he never filed the grievance with Officer Wilson; and, as discussed above, the court found that he never attempted to file the grievance with Officer Wilson.

What are the consequences for failing to complete the second step?

Defendants argue that the entire complaint should be dismissed for failure to exhaust administrative remedies under § 1997e(a). Russo argues that because his complaint seeks monetary damages and monetary damages are not available through the prison's grievance process, there were no administrative remedies for him to exhaust; thus, § 1997e(a) does not bar his claim with respect to either monetary or injunctive relief.

The court agrees in part with both parties.

 Regarding Russo's position, § 1997e(a) mandates the exhaustion of the prison's administrative remedies "as are available." Because Russo seeks monetary damages and the prison's administrative remedies do not provide any relief for such requests, there was no administrative remedy "available" for Russo to exhaust. Thus,

§ 1997e(a) is inapplicable with respect to the monetary damages request. *See Garrett v. Hawk*, 127 F.3d 1263, 1266–67 (10th Cir. 1997).

Regarding defendants' position, administrative remedies were "available" to deal with Russo's injunctive requests. Accordingly, pursuant to § 1997e(a), Russo was required to exhaust the prison's administrative remedies prior to initiating an action in this court.[4] Because he failed to do that, the injunctive aspect of this case is dismissed. *See Pratt v. Hurley*, 79 F.3d 601, 603 (7th Cir.1996) (discussing options available to the court).

Accordingly, at this stage of the proceeding, Russo's claim for monetary damages premised on allegations that he received inadequate medical care survives.

### B. Eighth Amendment—Inadequate Medical Care

Next, defendants argue that even if Russo's claim survives the § 1997e(a) analysis, they are nevertheless entitled to judgment because the evidence establishes that Russo received proper medical care. Defendants also argue that the claim against them in their official capacities is barred because it is a suit against the "state" and the state is not a "person" under § 1983.

The court agrees that the claim against the defendants in their official capacities is barred. Based on the record before the court, however, the court cannot grant summary judgment with respect to Russo's improper medical care claim.

### 1. Improper medical care

To establish a claim against prison officials premised on the Eighth Amendment, the plaintiff must show (1) that the deprivation was objectively "serious" and (2) that the prison official acted with "deliberate indifference" to the medical needs of the plaintiff.

---

4. If Russo desired to immediately file his claim in this court out of fear that he might miss the limitations period if he waited to pursue his injunctive relief administratively through the prison system, he could have filed the complaint seeking both injunctive and monetary relief and asked the court to stay the entire case pending resolution of his injunctive relief. Once the prison ruled on the dispute regarding the injunctive relief, Russo could have next proceeded on the monetary and injunctive aspects—if the dispute surrounding the injunctive relief remained unresolved—of his case in federal court.

 

*See Vance v. Peters,* 97 F.3d 987, 991 (7th Cir.1996).

 In support of their position that Russo received adequate medical care, defendants attach numerous "medical progress notes" to there motion·for summary judgment and argue that he was treated "adequately and often." The medical notes, however, are inadmissible hearsay—there is no underlying affidavit, deposition testimony, or anything else establishing a foundation for the admissibility of such evidence.[5]·· *See Friedel v. City of Madison,* 832 F.2d·965, 970 (7th Cir.1987) ("When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence."). Moreover, the court finds most of the writing contained within the "medical progress notes" indecipherable. Thus, obviously, the court cannot grant summary judgment against Russo on the ground that he received adequate medical care—there is no admissible evidence supporting such a position.

**2. Official capacity**

In *Will v. Michigan· Dept. Of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Accordingly, the claim for monetary damages against defendants—employees of the State of Illinois Department of Corrections—in their official capacities is barred. A claim against the defendants in their individual capacities remains, however.[6]

**III. CONCLUSION**

Defendants' motion for summary judgment · is granted in part and denied in part. Russo's requests for injunctive or equitable relief

are dismissed pursuant to 42 U.S.C. § 1997e(a) because he failed to exhaust administrative remedies. Russo's monetary claim against defendants in their individual capacities remains. Defendants are granted leave to file a properly supported motion for summary judgment addressing the merits of Russo's Eighth Amendment claim for inadequate medical care.

---

5. In a footnote, defendants cite *Venture Associates Corp. v. Zenith Data Sys.,* 987 F.2d 429, 431 (7th Cir.1993), for the proposition that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." The "medical progress notes," however, are neither referred to in Russo's complaint nor central to his claim for improper medical care.

6. The complaint fails to state whether defendants are being sued in their. individual or official

capacities. Because Russo was *pro se* when the complaint was filed, the court liberally construes the complaint and based on the request for monetary damages the court presumes defendants are being sued in their individual· capacities. *See Abdul–Wadood v. Duckworth,* 860 F.2d 280, 287 (7th Cir.1988) ("[H]is claim for [monetary] damages is sufficient to alert the court and the defendants that he may be suing them in their individual capacities."); *Marshall v. Fairman,* 951 F.Supp. 128, 131 (N.D.Ill.1997).