**Ricky MOORE, Plaintiff,**

v.

**CO2 SMITH and Wayne Garner, Commissioner,[1] Defendants.**

**No. Civ.A. 4:96–CV–0228–HLM.**

United States District Court,
N.D. Georgia,
Rome Division.

Aug. 28, 1998.

---

**1.** The Court already has dismissed Defendant Garner from this lawsuit. (Order of Dec. 30, 1996.)

Ricky Moore, Valdosta, GA, pro se.

John C. Jones, Ralph Williams Ellis, Office of State Atty. Gen., Atlanta, GA, for John Allen Smith.

## ORDER

HAROLD L. MURPHY, District Judge.

This is a *pro se* prisoner civil rights case in which Plaintiff alleges that Defendant Smith hit Plaintiff in the face and head with a fan. The case is before the Court on Defendant Smith's Motion to Dismiss [19].

### I. Background

Plaintiff is an inmate in the custody of the Georgia Department of Corrections. (Compl. at 2.) At the times relevant to this lawsuit, Plaintiff resided at Hays Correction Institution ("HCI") in Trion, Georgia. (*Id.*) Defendant Smith is a corrections officer at HCI. (*Id.*)

Plaintiff alleges that on July 10, 1996, the following events occurred. Defendant Smith entered Plaintiff's cell and told Plaintiff to "get out of here, inmate." (Compl. at 3.) Defendant Smith then pushed Plaintiff out of the cell. (*Id.*) When Plaintiff looked at Defendant Smith, Defendant Smith asked Plaintiff "what are you looking at?" (*Id.*) Plaintiff answered "nobody sir." (*Id.*) Defendant Smith then asked Plaintiff if Plaintiff had a problem with him, and Plaintiff replied "no, sir." (*Id.*) Plaintiff alleges that Defendant Smith then grabbed inmate Green's fan and hit Plaintiff in the face and head. (*Id.*)

On July 17, 1996, Plaintiff filed a grievance in accordance with HCI's grievance procedure. (Aff. of Richard Chamlee ¶ 5, Attachment 1.)[2] On August 29, 1996, Richard Chamlee, HCI's inmate grievance coordinator, notified Plaintiff that his grievance was denied. (Chamlee Aff. ¶ 5, Attachment 2, Attachment 3.)[3] Plaintiff did not appeal the

---

**2.** Defendant Smith attached three documents to Richard Chamlee's Affidavit without numbering them. In order to ensure that the reader can identify the documents to which the Court refers during this Order, the Court assigns the following numbers to the three documents. First, Defendant Smith attached HCI's grievance procedure, which the Court will call "Attachment 1." Second, Defendant Smith attached a two-page computer printout that documents the progress of Plaintiff's grievance, which the Court will call

"Attachment 2." Third, Defendant Smith attached a copy of Plaintiff's grievance form, which the Court will call "Attachment 3."

**3.** Chamlee avers that he notified Plaintiff that his grievance was denied on August 21, 1996. (Chamlee Aff. ¶ 5.) Chamlee's documents, however, indicate that this notification occurred on August 29, 1996. (Chamlee Aff. Attachment 2, Attachment 3.) For the purposes of this Order,

denial of his grievance. (Chamlee Aff. ¶ 5, Attachment 2.)

On August 14, 1996, Plaintiff filed his Complaint pursuant to 42 U.S.C. § 1983, alleging that Defendant Smith violated Plaintiff's civil rights by hitting Plaintiff with inmate Green's fan. As a remedy, Plaintiff seeks to have Defendants removed from their jobs, and also requests monetary damages. On May 18, 1998, Defendant Smith filed his Motion to Dismiss, arguing that Plaintiff did not exhaust his administrative remedies because Plaintiff failed to appeal the denial of his grievance under the HCI grievance procedure, as required by 42 U.S.C.A. § 1997e(a).

## II. Discussion

In 1996, Congress enacted the Prison Litigation Reform Act (PLRA) to "stem the tide of meritless prisoner cases." 141 Cong.Rec. S7498–01, S7525 (1994) (statement of Sen. Kyl, announcing co-sponsorship of the bill that later was enacted as the PLRA). One provision of the PRLA modified 42 U.S.C.A. § 1997e to "require[ ] State prisoners to exhaust all administrative remedies before filing a lawsuit in Federal Court." 141 Cong. Rec. S7498–01, S7524 (1994) (Statement of Sen. Dole, announcing co-sponsorship of the bill that later was enacted as the PLRA). Prior to enactment of the PLRA, the relevant portion of 42 U.S.C.A. § 1997e provided:

(1) Subject to the provisions of paragraph (2), in any action brought pursuant to section 1983 of this title by [a prisoner], the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue such case for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available.

(2) The exhaustion of administrative remedies under paragraph (1) may not be required unless the Attorney General has certified or the court has determined that such administrative remedies are in substantial compliance with the minimum acceptable standards promulgated under

subsection (b) of this section or are otherwise fair and effective.

42 U.S.C.A. § 1997e(a)(1)–(2) (1994).

The previous version of § 1997e had three notable characteristics. First, the exhaustion requirement only applied to § 1983 actions, not to other lawsuits for monetary damages filed pursuant to other provisions of federal law. *McCarthy v. Madigan*, 503 U.S. 140, 150, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). Second, the exhaustion requirement was optional in the sense that courts were not required to dismiss cases in which a prisoner failed to exhaust administrative remedies, but merely were permitted to invoke the exhaustion requirement if the court determined that such action "would be appropriate and in the interests of justice...." § 1997e(a)(1); *Gartrell v. Gaylor*, 981 F.2d 254, 259 (5th Cir.1993) (per curium). Third, either the Attorney General had to certify the prison's grievance procedure or the court had to evaluate the prison's grievance procedure and "determine[ ] that such administrative remedies are in substantial compliance with the minimum acceptable standards promulgated [by the Attorney General]." § 1997e(a)(2); *Gartrell*, 981 F.2d at 259.

As a result of the PRLA amendments, the relevant portion of § 1997e now provides:

(a) No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.A. § 1997e(a) (West Supp.1998). The PLRA amendments thus resulted in three significant changes to the language of § 1997e. First, the exhaustion requirement no longer is restricted to § 1983 cases, but now applies to cases "brought ... under any other Federal law...." *Id.*; *Garrett v. Hawk*, 127 F.3d 1263, 1265 (10th Cir.1997). Second, courts no longer possess discretion in deciding whether to apply the exhaustion requirement, as indicated by the replacement of the condition "if the court believes that such a requirement would be appropriate and

the Court will use August 29, 1996, as the date of notification.

in the interests of justice" with the mandate "[n]o action shall be brought." *Garrett*, 127 F.3d at 1265. Third, courts no longer must assess the administrative remedy and "determine[ ] that such administrative remedies are in substantial compliance with the minimum acceptable standards promulgated [by the Attorney General]," as this provision has been eliminated by the PLRA.

Here, Plaintiff asserts an excessive force claim under § 1983, alleging that Defendant Smith violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by hitting Plaintiff with a fan. Plaintiff asks the Court to remove Defendants from their jobs and award monetary damages to Plaintiff. Although Plaintiff filed a grievance under HCI's grievance procedure, Plaintiff did not appeal the denial of his grievance. Plaintiff thus has failed to exhaust "such administrative remedies as are available," and his case must be dismissed. § 1997e(1); *Brown v. Toombs,* 139 F.3d 1102, 1103 (6th Cir.1998) (per curiam) ("In light of the plain mandatory language of the statute regarding exhaustion of remedies, the legislative purpose underlying the plain language, and the sound policy on which it is based, this court will henceforth require that prisoners filing § 1983 claims involving prison conditions must allege and show that they have exhausted all available state administrative remedies."); *Hernandez v. Steward,* No. 96-3222–SAC, 1996 WL 707015 *2 (D.Kan. Nov. 27, 1996) ("plaintiff was still obligated to pursue all levels of the administrative scheme"); *Morgan v. Arizona Dept. of Corrections,* 976 F.Supp. 892, 895 (D.Ariz.1997) ("Plaintiff here must pursue all levels of [Defendant's] administrative procedure").

■ In reaching this conclusion, the Court notes that some case law exists holding that when an inmate asserts a claim of assault by a prison guard, the inmate's lawsuit does not relate to "prison conditions" and exhaustion is not required. *Rodriguez v. Berbary,* 992 F.Supp. 592, 593 (W.D.N.Y.1998); *Johnson v. O'Malley,* No. 96 C 6598, 1998 WL 292421, at *3 (N.D.Ill. May 19, 1998) (unpublished). Although § 1997e does not define the term "action ... with respect to prison conditions," another portion of the PLRA does contain such a definition. Prison Litigation Reform Act of 1995, Pub.L. 104–140, 110 Stat. 1327. The PLRA defines the term "civil action with respect to prison conditions" as "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined to prison, but does not include habeas corpus proceedings...." *Id.* Although this definition is codified at 18 U.S.C.A. § 3626(g)(2), the definition nevertheless is the best indication of what Congress intended when it used the term "action ... with respect to prison conditions" in § 1997e(a). Under this definition, an assault by a prison guard qualifies as an "effect[ ] of actions by government officials on the lives of [prisoners]...." *Morgan v. Arizona Dept. of Corrections,* 976 F.Supp. 892, 895–96 (D.Ariz. 1997). The Court thus finds the cases holding that an assault by a prison guard is not a "prison condition" unpersuasive.

The Court also notes that, in another line of cases, courts have held that when a prisoner sues for monetary damages, the prisoner does not have to exhaust his administrative remedies because monetary damages are not "available" under prison grievance procedures. *Garrett v. Hawk,* 127 F.3d 1263, 1266 (10th Cir.1997); *Lunsford v. Jumao–As,* 139 F.3d 1233, 1233 (9th Cir.1998); *Hollimon v. DeTella,* 6 F.Supp.2d 968 (N.D.Ill.1998); *Jackson v. DeTella,* 998 F.Supp. 901, 904 (N.D.Ill.1998); *Sanders v. Elyea,* 1998 WL 67615 *5–6 (N.D.Ill. Feb.10, 1998); *Russo v. Palmer,* 990 F.Supp. 1047, 1050 (N.D.Ill. 1998); *Polite v. Barbarin,* 1998 WL 146687 *2 (S.D.N.Y. March 25, 1998) (unpublished). These cases reason that Congress could not have intended to force a prisoner to exhaust administrative remedies with respect to a claim for monetary damages when the prison grievance procedure does not provide a procedure for adjudicating claims for monetary damages because, in such a situation, monetary damages are not an "available remedy" within the meaning of § 1997e. *Garrett,* 127 F.3d at 1266–67. Because no "available" remedy exists, the reasoning goes, requiring the prisoner to file a grievance is an exercise in futility. *Jackson,* 998 F.Supp. 901, 904.

The Court disagrees with this line of cases and believes that the prisoners should be required to exhaust administrative remedies with respect to claims for monetary damages for five reasons. First, the plain language of § 1997e does not provide such a qualification. Indeed, the statute merely states that the prisoner must exhaust "such administrative remedies as are available." § 1997e(a). The most natural reading of this language leads to the conclusion that Congress was not asking courts to evaluate the sufficiency of the administrative remedies, but merely intended to require prisoners to utilize the existing administrative remedies, whether the grievance procedure will produce the precise remedy that the prisoner seeks or some other remedy.

Second, if this was not the case, prisoners easily would be able to avoid the exhaustion requirement by simply including a request for monetary damages in their complaints.[4] Such a reading clearly would not serve the PRLA's stated purpose, which is to "stem the tide of meritless prisoner cases." 141 Cong.Rec. S7498–01, S7525 (1994) (statement of Sen. Kyl, announcing co-sponsorship of the bill that later was enacted as the PLRA). Given the stated purpose of the PLRA, the Court believes that Congress did not intend to give prisoners the ability to circumvent available administrative remedies simply by asserting a claim for monetary damages.

Third, despite the fact that the prisoner may be asserting a claim for a remedy that is unavailable from the prison grievance system, several benefits result from requiring prisoners to assert their claims first at the administrative level. *See McCarthy v. Madigan,* 503 U.S. 140, 149, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (discussing benefits of requiring prisoner to exhaust administrative remedies even if prisoner seeks monetary relief). For instance, the prison has "a substantial interest in encouraging internal resolution of grievances and in preventing the undermining of its authority by unnecessary resort by prisoners to the federal courts." *Id.* 503 U.S. at 155, 112 S.Ct. 1081; *see also Preiser v. Rodriguez,* 411 U.S. 475, 491–92,

93 S.Ct. 1827, 36 L.Ed.2d 439 (expressing state prison's and state courts' strong interest in resolving complaints filed by state prisoners). This is especially true when, as Plaintiff does here, the prisoner asserts a claim of misconduct against one of the prison employees. The prison has a strong interest in resolving the merits of the claim and taking appropriate action against the offending employee in the event that the prisoner's claim has merit. *Id.* 503 U.S. at 149, 112 S.Ct. 1081.

Fourth, the federal judiciary itself has an interest in ensuring that the prison has the first crack at resolving any disputes. If the prison successfully resolves the complaint, one less case will be brought to federal court, and the heavy burden borne by the federal court system may be lessened. *Id.; Irwin v. Quinlan,* 791 F.Supp. 301, 303 (S.D.Ga.1992).

Fifth, the prisoner's interests are not compromised by forcing the prisoner to exhaust administrative remedies. Indeed, the prisoner may very well receive some kind of relief that satisfies him, thus actually benefitting from pursuing his claim within the prison grievance procedure. At worst, the prisoner will have had to complete a few extra forms and experience a slight delay in his ability to file his federal lawsuit. Such a small drawback pales in comparison to the numerous benefits of requiring the prisoner to pursue his grievance with the prison before filing a federal lawsuit. The Court thus finds the cases that refuse to apply § 1997e(a)'s exhaustion requirement to prisoner's claims for monetary relief unpersuasive, and declines to follow them. Consequently, the Court grants Defendant's Motion to Dismiss and dismisses this case without prejudice so that Plaintiff can appeal the denial of his grievance.

ACCORDINGLY, the Court **GRANTS** Defendants Motion to Dismiss [19].

---

4. Indeed, because virtually every prisoner case before this Court asks for monetary relief, the Court could not subject any of these cases to the exhaustion requirement of § 1997e(a).