Angel Miranda TORRES, Plaintiff

v.

Zoe Laboy ALVARADO,
et al., Defendants

No. CIV 00–2186 JP.

United States District Court,
D. Puerto Rico.

April 9, 2001.

José R. Olmo Rodríguez, Esq., Edif. El Centro I, Hato Rey, PR, for Plaintiff.

Gloria Robison–Guarch, Francisco A. Ojeda Diez, Department of Justice of PR, Federal Litigation Division, San Juan, PR, for Defendant.

### OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION

Plaintiff Angel Miranda Torres, an inmate, brings this action under 42 U.S.C. § 1983 against Defendants Zoe Laboy Alvarado, Leocadio Hernández, Johnny Heredia Caloca, Captain Héctor Fontánez, Gladys Rivera, Alfredo Murphy Rivera, Captain Luis Aponte, Carlos Rodríguez Delgado, Amaury Pérez, Wilson Morales, Lieutenant José Sánchez, and Richard Rosado, in their personal capacities. The Complaint states that Defendants violated Plaintiff's rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiff claims that Defendants subjected him to a substantial risk of serious harm by incarcerating him in Building Q of the Bayamón Regional Metropolitan Detention Center, commonly known as Bayamón 308, without ensuring that he was provided adequate security and protection. As a result, Plaintiff alleges that he was attacked and sodomized by fellow inmates.

Before the Court is the Motion to Dismiss filed by Co-defendants Johnny Heredia Caloca ("Heredia"), Captain Héctor Fontánez ("Fontánez"), Gladys Rivera ("Rivera"), Alfredo Murphy Rivera ("Murphy"), Captain Luis Aponte ("Aponte"), Carlos Rodríguez Delgado ("Rodríguez"), Amaury Pérez ("Pérez"), Wilson Morales ("Morales"), Lieutenant José Sánchez ("Sánchez"), and Richard Rosado ("Rosado") (docket No. 26); Plaintiff's Opposition thereto (docket No. 27); Co-defendants Zoe Laboy Alvarado ("Laboy") and Leocadio Hernández's ("Hernández") Motion to Dismiss (docket No. 30), joined by the other Co-defendants hereto (docket No. 31); and Plaintiff's Opposition (docket No. 33). Defendants jointly raise five grounds for dismissal of this action. First, they argue that Plaintiff failed to exhaust available administrative remedies pursuant to 42 U.S.C. § 1997e(a) prior to bringing an action relating to prison conditions. Second, Defendants contend that the Complaint fails to allege facts sufficient to sustain a causal connection between Defendants' alleged conduct and the constitutional violation asserted. Third, they argue that Plaintiff's allega-

tions fall short of stating a claim under the Due Process clause. Fourth, Defendants claim that the Complaint does not adequately allege a basis for supervisory liability. Finally, Defendants raise the defense of qualified immunity.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff filed the instant Complaint on September 13, 2000. The Complaint states that on September 17, 1999, Plaintiff was in the custody of the Corrections Administration and incarcerated in Building Q of Bayamón 308. The housing unit in which Plaintiff was incarcerated consisted of a corridor of two-person capacity cells. The control room is a separate, enclosed area located at the entrance to the housing unit or corridor. Only one officer was assigned to Building Q on September 17, 1999, and that officer remained at or near the control room the entire day. No officers were inside the housing unit itself, nor did any officer patrol the corridor. Given the design of the building, it was impossible for an officer to view the inmates in their cells or hear sounds emanating from the cells located along the corridor unless they actually patrolled the corridor.

On or about September 17, 1999, several inmates in Plaintiff's housing unit forcefully held him down and sodomized him. The inmates, some or all of whom have been convicted of violent assaults, threatened to kill Plaintiff if he reported the incident. At no time did any officer intervene to prevent or stop the attack, even though it lasted approximately one-half hour. At some time after the attack, Plaintiff was taken to the prison medical area and then to a local hospital. Plaintiff suffered pain, bleeding, and abrasions in the anal area, and continues to suffer nightmares, anxiety and depression as a result of the incident.

At the time of the attack, Plaintiff alleges that the Corrections Administration had a practice at most of their facilities, including Bayamón 308, of mixing inmates of different custody and security needs in the same housing units. It was also a practice of the Corrections Administration and at Bayamón 308 to have custodial officers remain outside of the housing units at all times except for counts, rare housing unit inspections, and occasionally to provide certain services to the inmates. As such, the officers had very little interaction with or supervision over the inmates. Further, Plaintiff alleges that the Corrections Administration fails to adequately train and supervise the prison staff, resulting in unreasonably dangerous conditions of confinement in Corrections Administrations institutions.

At all times pertinent to this action, the Complaint states that all Defendants[1] were aware that inmates with different custody and security needs were being housed together, and that the custodial officers provided minimal supervision over

---

1. Plaintiff identifies Defendants as holding the following positions during all times relevant to the Complaint: Co-defendant Laboy was the Administrator of Corrections; Co-defendant Hernández was the Superintendent at Bayamón 308; Co-defendant Heredia or Fontañez was the Director of Security, or the Auxiliary Administrator for Security, for the Corrections Administration; Co-defendant Rivera was the Director of Classification for the Corrections Administration; Co-defendant Murphy was the Director of the Bayamón Region; Co-defendant Aponte was the Director of Security for the Bayamón Region; Co-defendant Rodríguez was the Director of the Bayamón Correctional Complex; Co-defendant Pérez was the Complex Manager of the Bayamón Correctional Complex; Co-defendant Morales was the Director of Security at the Bayamón Correctional Complex; Co-defendant Sánchez was the Commander of the Guard at Bayamón 308; and Co-defendant Rosado was a supervisory security officer at Bayamón 308.

the inmates, both of which were unreasonably dangerous practices. All Defendants were aware that these practices were unreasonably dangerous, yet took no measures to put an end to the practices or to protect Plaintiff from harm. Defendants exposed Plaintiff to a substantial risk of serious harm in failing to provide him adequate protection from stronger, dangerous inmates.

## III. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Miranda v. Ponce Fed. Bank,* 948 F.2d 41 (1st Cir.1991). The Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996) (citations omitted); *see also Berrios v. Bristol Myers Squibb Caribbean Corp.,* 51 F.Supp.2d 61 (D.Puerto Rico 1999). A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Romero–Barceló v. Hernández–Agosto,* 75 F.3d 23, 28 n. 2 (1st Cir.1996) (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988)).

## IV. DISCUSSION

■ "[I]t is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (quoting *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). The cruel and unusual punishments clause of the Eighth Amendment imposes a duty upon prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of inmates.'" *Id.* (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)). This duty arises from the State's assumption of custody over, and incarceration of, persons predisposed to antisocial and perhaps violent behavior, while at the same time "having stripped them of virtually every means of self-protection and foreclosed their access to outside aid . . . ." *Id.* at 833, 114 S.Ct. at 1977. As part of their mandate to ensure inmates' safety, the First Circuit has held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Cortés–Quiñones v. Jiménez–Nettleship,* 842 F.2d 556, 558 (1st Cir.), *cert. denied,* 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988).

■ To state a claim under the Eighth Amendment based on prison conditions, a two requirements must be satisfied. *See Giroux v. Somerset County,* 178 F.3d 28, 32 (1st Cir.1999). First, the alleged deprivation of adequate conditions of confinement must be objectively serious. In other words, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* Second, the official involved must have had a sufficiently culpable state of mind, which the U.S. Supreme Court has defined as "deliberate indifference" to an inmate's

health or safety. *Id.* (citing *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977). In *Farmer,* the Supreme Court delineated the contours of the "deliberate indifference" standard, finding that it entailed something more than mere negligence, and something less than the intentional or knowing infliction of harm. *See Farmer,* 511 U.S. at 835–36, 114 S.Ct. at 1978. More specifically, the Court held that a prison official must know of and disregard an excessive risk to inmate health or safety; "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. at 1979.

■ Prior to analyzing whether Plaintiff has stated a claim under the Eighth Amendment, however, the Prison Litigation Reform Act ("PLRA"), enacted in 1996, now requires Courts first to assess whether an inmate has exhausted administrative remedies before bringing suit in federal court. *See Pérez v. Wisconsin Dept. of Corrections,* 182 F.3d 532, 536 (7th Cir.1999) (a court must not proceed to render a decision on the merits until it has considered whether the inmate has complied with the PLRA's exhaustion requirement). The relevant statutory provision, 42 U.S.C. § 1997e(a), states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Although the plain language of section 1997e(a) mandates that prisoners exhaust available administrative remedies before filing a federal claim, Plaintiff contends that he was not required to exhaust administrative procedures because the grievance procedure in place did not provide for the relief sought—monetary damages.

■ There exists a split among the Circuit Courts of Appeals on how section 1997e(a) should be construed. More specifically, the Courts disagree on whether an inmate must exhaust administrative remedies when the administrative procedure cannot provide the relief sought, which is generally the case where an inmate seeks monetary damages. In holding that an inmate need not avail himself of administrative remedies in such cases, the Tenth Circuit reasoned that while the statutory language requires the exhaustion of "available" administrative remedies, a remedy incapable of providing the relief sought cannot be considered an "available remedy." *See Garrett v. Hawk,* 127 F.3d 1263, 1266 (10th Cir.1997). The Fifth and Ninth Circuits, and several district courts, similarly have held that an inmate need not exhaust administrative remedies where monetary, as opposed to injunctive, relief is sought and the administrative process does not provide for such a remedy. *See Rumbles v. Hill,* 182 F.3d 1064, 1069 (9th Cir.1999) ("Exhaustion of administrative remedies under section 1997e(a) is not required if a prisoner's section 1983 claim seeks only money damages and if the correctional facility's administrative grievance process does not allow for such an award."); *Lunsford v. Jumao–As,* 155 F.3d 1178, 1179 (9th Cir.1998); *Whitley v. Hunt,* 158 F.3d 882, 886–87 (5th Cir.1998); *see also White v. Fauver,* 19 F.Supp.2d 305, 313, 316–17 (D.N.J.1998); *Polite v. Barbarin,* No. 96 Civ. 6818(DLC), 1998 WL 146687, at *2 (S.D.N.Y. Mar.25, 1998); *Lacey v.C.S.P. Solano Medical Staff,* 990 F.Supp. 1199, 1205 (E.D.Ca.1997) (holding that when "an institutional administrative procedure is not empowered to achieve the end sought by plaintiff ... it is not an 'available' administrative remedy within the ordinary meaning of that word").

On the other hand, the Sixth, Seventh, and Eleventh Circuits have held that an inmate bringing a conditions-of-confinement claim seeking monetary damages must exhaust the correctional facility's internal grievance procedure regardless of whether that procedure provides for the desired relief. *See Lavista v. Beeler*, 195 F.3d 254, 256–57 (6th Cir.1999); *Wyatt v. Leonard*, 193 F.3d 876 (6th Cir.1999); *Pérez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 537 (7th Cir.1999); *Alexander v. Hawk*, 159 F.3d 1321, 1324 (11th Cir.1998), *reh'g en banc denied*, 172 F.3d 884 (11th Cir.1999). The Eleventh Circuit based its decision on a careful analysis of the legislative history of the PLRA. The precursor to section 1997e(a) required the exhaustion of "such plain, speedy, and effective administrative remedies as are available." 42 U.S.C. § 1997e(a)(1) (1994) (amended 1996). The U.S. Supreme Court, in *McCarthy v. Madigan*, 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), relied on this language in concluding that a prisoner seeking money damages, which the available administrative process had no power to award, had no "effective" remedy available to him and thus need not exhaust administrative remedies. *See McCarthy*, 503 U.S. at 150, 112 S.Ct. at 1089. Congress then amended the statute to require exhaustion of "such administrative remedies as are available." 42 U.S.C. § 1997e(a). The Eleventh Circuit found that this shift in statutory language indicated "that Congress no longer wanted courts to examine the effectiveness of administrative remedies but rather to focus solely on whether an administrative remedy program is 'available' in the prison involved." *Alexander*, 159 F.3d at 1326. The Court further emphasized that in contrast to judicially-crafted exhaustion doctrines, congressionally-mandated exhaustion divests the courts of the authority to waive the requirement if exhaustion would be futile or the remedy inadequate. *See id.* at 1326 (citing *Weinberger v. Salfi*, 422 U.S. 749, 766, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975) (where exhaustion is statutorily mandated as a jurisdictional prerequisite, "the requirement ... may not be dispensed with merely by a judicial conclusion of futility.")).

The context in which Congress passed the PLRA bolstered the Eleventh Circuit's conclusion: the mandatory exhaustion requirement was enacted as part of an effort "to curtail frivolous and abusive prisoner litigation." *Id.* at 1324. In fact, by 1995 prisoners were bringing more than twenty-five percent of the cases filed in the federal district courts. *See id.* (citing *Roller v. Gunn*, 107 F.3d 227, 230 (4th Cir.1997)). And Congressional findings indicated that prisoners filed more frivolous lawsuits that any other class of persons. *See id.*

Mandatory exhaustion also serves important interests. "Although it may make sense to excuse exhaustion of the prisoner's complaint where the prison system has a flat rule declining jurisdiction over such cases, it does not make sense to excuse the failure to exhaust when the prison system will hear the case and attempt to correct legitimate complaints, even though it will not pay damages." *Lavista*, 195 F.3d at 257. Thus, an inmate may be successful in having the prison at least review its policies and procedures, and perhaps halting an infringing practice, even if he cannot receive monetary damages. *See id.* In addition, other policy considerations favor exhaustion as a general matter: it permits the agency to develop the necessary factual background upon which decisions should be based; it allows the agency to exercise its discretion or apply its expertise; it improves the efficiency of the administrative process; it conserves scarce judicial resources since the complaining party may vindicate rights

on the administrative level without the need for court intervention; it gives the agency a chance to discover and correct its own errors; and it avoids the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures. *See Alexander,* 159 F.3d at 1327.

This Court is convinced by the arguments in favor of requiring exhaustion in cases such as this. The most logical interpretation of the amendments to the statutory language, particularly in view of the legislative history, is that Congress intended to effect a change in the law as stated in *McCarthy,* rendering exhaustion mandatory where an administrative procedure is available, not only where such procedure furnishes an effective remedy. Further, the policy considerations favoring exhaustion far outweigh the slight burden it imposes on inmates to present their claims first to the relevant agency. The three district courts in the First Circuit to have addressed the issue, and a majority of the district courts, likewise have been convinced by the forcefulness of the arguments in favor of exhaustion. *See Rivera v. García,* 192 F.R.D. 57 (D.Puerto Rico 2000); *Feliciano v. Servicios Correccionales,* 79 F.Supp.2d 31 (D.Puerto Rico 2000); *Murphy v. Magnusson,* No. Civ. 98–439–P–C, 1999 WL 615895, *2 (D.Me. July 27, 1999); *see also McNatt v. Unit Manager Parker,* No. 3:99CV1397 AHN, 2000 WL 307000, *11 (D.Conn. Jan.18, 2000); *A.N.R. ex rel. Reed v. Caldwell,* 111 F.Supp.2d 1294, 1298 (M.D.Ala.2000); *McGrath v. Johnson,* 67 F.Supp.2d 499, 510 (E.D.Pa.1999); *Sallee v. Joyner,* 40 F.Supp.2d 766, 770 (E.D.Va.1999); *Beeson v. Fishkill Correctional Facility,* 28 F.Supp.2d 884, 892–95 (S.D.N.Y.1998), *overruled on other grounds, Nussle v. Willette,* 224 F.3d 95 (2d Cir.2000); *Moore v. Smith,* 18 F.Supp.2d 1360, 1364 (N.D.Ga.

1998); *Bearden v. Godfrey,* No. C98–2294 CAL(PR), 1998 WL 456294, *1 (N.D.Cal. July 27, 1998); *Spence v. Mendoza,* 993 F.Supp. 785, 787–88 (E.D.Cal.1998); *Gibbs v. Bureau of Prison Office,* 986 F.Supp. 941, 943–44 (D.Md.1997). For these reasons, the Court finds that Plaintiff must exhaust administrative remedies prior to bringing an action related to prison conditions. Because Plaintiff does not dispute that he failed to exhaust administrative remedies, this action is subject to dismissal.

## V. CONCLUSION

In view of the foregoing discussion, the Motion to Dismiss is hereby **GRANTED** for failure to exhaust administrative remedies. The Court abstains from ruling upon the remaining grounds for dismissal raised by Defendants, because treatment of the merits is foreclosed by Plaintiff's failure to satisfy the jurisdictional prerequisite of exhaustion.

**IT IS SO ORDERED.**