Michael MASSEY, and John Otten, M.D., Plaintiffs,

v.

David HELMAN, Warden of the Federal Correctional Center in Pekin, Illinois, in his individual capacity; Ferdinand Somalia, Health Services Administrator of the Federal Correctional Center in Pekin, Illinois, in his individual capacity; Miguel Gonzalez, Assistant Warden of the Federal Correctional Center in Pekin, Illinois, in his individual capacity; and Kenneth Morit Sugu, M.D., Medical Director of the Bureau of Prisons of the United States Department of Justice, in his individual and official capacity, Defendants.

No. 97–1401.

United States District Court, C.D. Illinois, Springfield Division.

Feb. 2, 1999.

John P. Nicoara, Richard L. Steagall, Peoria, IL, John H. Bisbee, Macomb, IL, for plaintiffs.

Gerard A. Brost, Peoria, IL, James A. Lewis, Springfield, IL, for defendants.

### *OPINION*

RICHARD MILLS, District Judge.

A prisoner and a prison doctor join together to bring this case.

It must be dismissed.

## I.  FACTUAL BACKGROUND

Plaintiff Michael Massey is a prisoner at the Federal Correctional Facility in Pekin, Illinois ("Pekin Facility" or "Pekin"). He contends that he did not receive proper treatment for a hernia and that this improper treatment constituted a denial of his Eighth

Amendment right to receive adequate medical care. He specifically contends that three policies of the Bureau of Prisons resulted in his inadequate medical care.[1]

Plaintiff John Otten was a physician who worked at the Pekin Facility until he was discharged in February 1998. He alleges that he was discharged in furtherance of the unconstitutional policy of depriving inmates of their Eighth Amendment right to medical care and their First Amendment right of access to the courts. In addition, he claims a deprivation of his own First Amendment right to speak on matters of public concern.

## II. PROCEDURAL BACKGROUND

The parties have filed a plethora of motions in this case[2], and few of the memoranda in support of those motions have been especially helpful to the Court in terms of clear argument or complete inclusion of relevant authorities. In fact, in one of the representative types of pleadings before the Court, Plaintiff[3] Massey filed a motion to discuss additional authority in which was mentioned several cases that supported contentions in one of his earlier motions. However, he completely omitted discussion of other cases, such as the Eleventh Circuit case of *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir.1998) that directly undermines his contentions. The *Alexander* case was decided more than a month before Plaintiff's motion was filed. This sort of selective presentation of authority is more than a little deceptive and is strongly discouraged by the Court.

Defendants have filed a motion to dismiss the complaint. The grounds for this motion are (1) that Mr. Massey is required to exhaust his administrative remedy before filing an action in this Court, (2) that the Court lacks jurisdiction over Dr. Otten's claims, and (3) that Dr. Otten lacks standing to bring the claims.

Plaintiffs filed their responses in two lengthy and overlapping memoranda. Their argument, in summary, is that exhaustion is not required as to Mr. Massey and that Dr. Otten's claims are not barred by any lack of jurisdiction or standing problems.

Perhaps on the theory that more is preferable to less, Mr. Massey also has filed a motion styled "Rule 56 Motion to Deny Defendants Application for Summary Judgment." In this motion, Mr. Massey asserts that Defendants have converted their motion to dismiss into a motion for summary judgment by including an affidavit with the motion to dismiss. Thus, he concludes, there must be additional discovery on the contested issues of fact and he must be given a further opportunity to respond. In addition, Plaintiffs have filed a motion for leave to amend his fourth amended complaint and a motion to compel.

## III. ANALYSIS

### A. MOTION TO DISMISS COUNT I

■ Defendants, in their motion to dismiss count I, contend that Mr. Massey has failed to exhaust his administrative remedies as a prerequisite to bringing this action in federal court. Defendants argue that since he has not satisfied this requirement, the action must be dismissed.

This exhaustion requirement is set out in the Prison Litigation Reform Act ("PLRA"), codified at 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prison-

---

**1.** The alleged policies are (1) policy prohibiting surgical repair of hernias; (2) policy that the medical Director is the only person who can approve a surgical hernia repair; (3) policy that prison physicians have no control over the authorization of medical treatment that they order to be performed by consulting physicians.

**2.** The motions decided in this opinion include the following: Motion to Dismiss filed by Defendant; Plaintiffs' Motion for Leave to Amend Fourth

Amended Complaint; Plaintiff Massey's Motion to Deny Defendants' Application for Summary Judgment or, alternatively, to Continue Hearing; Plaintiffs' Motion to Compel.

**3.** Since the two plaintiffs filed some separate memoranda, they will be referred to individually as Mr. Massey and Dr. Otten. When appropriate, they will be referred to collectively as "Plaintiffs".

er confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a).

Plaintiff contends that there is no requirement of administrative exhaustion in this case because there is no administrative remedy "available" in this case. Mr. Massey's contention is that he could not have received the relief he is seeking in this case in any administrative proceedings available to him at Pekin. Specifically, he argues that neither money damages nor an alteration in the BOP's alleged policy prohibiting surgical repair of hernias could be obtained via the administrative remedy. Thus, he concludes that no administrative remedy was "available" to him and that the PLRA therefore does not bar this action in federal court.

On the other hand, the defendants argue that the term "available" does not refer to the *effectiveness* of the administrative remedy. They argue that because an administrative remedy does exist for challenging prison conditions at Pekin, and because Mr. Massey has failed to use those procedures, he is barred from bringing this claim in this Court. Thus, the resolution of this issue turns on whether the term "available" means that the remedy sought in the lawsuit must be obtainable via the administrative procedures, or, instead, the term "available" means that there is some remedy in place that the prisoner could have taken advantage of, even if the potentially obtainable remedy would not be as effective in terms of the relief sought in the court action.

The Courts are divided on this issue. Some courts do not require that a prisoner who is seeking a monetary remedy exhaust her administrative remedies when the administrative remedy does not include the payment of money. *See Garrett v. Hawk*, 127 F.3d 1263 (10th Cir.1997); *Lunsford v. Jumao-As*, 139 F.3d 1233 (9th Cir.1998); *Whitley v. Hunt*, 158 F.3d 882 (5th Cir.1998). The reasoning of these courts is that if an administrative remedy does not include an award of damages, then money damages are not "available" and hence a prisoner seeking money damages may bypass the administrative proceeding and bring an action in federal court.

Other courts, however, have recognized that the inquiry must be focused on the intent of Congress evidenced by the PLRA. The court should look first to the statutory language and then to other relevant indicia of Congress' intent to determine if exhaustion is required by the PLRA as a prerequisite to a lawsuit in federal court.

Some courts have performed this inquiry in laudable detail. For example, the Eleventh Circuit has reasoned that the phrase "administrative remedies as are available" in the PLRA does not mean that the remedy must in addition be an *adequate* administrative remedy. *See Alexander v. Hawk*, 159 F.3d 1321, 1327 (11th Cir.1998) (emphasis added). Several reasons are given for this conclusion.

First, one indication of Congress' intent in the PLRA is that the former version of the PLRA required "exhaustion of such plain, speedy, and effective administrative remedies as are available." 42 U.S.C. § 1997e(a)(1) (1994); *See Alexander* at 1326. As can be seen from this change in statutory language, Congress has deleted the terms "plain," "speedy," and "effective," from the statutory language. This is a good indication that Congress intended for prisoners to resort initially to administrative remedial procedures, without regard to the ultimate effectiveness of that remedial procedure in providing the specific relief requested by the prisoner. *Alexander* at 1326.

Also, if the Courts were required to examine carefully every case and determine whether the administrative remedies were as effective as the relief sought in the lawsuit, then Congress' purpose in enacting the PLRA would be seriously undermined. Among other things, Congress sought, in the PLRA, to reduce the load of frivolous prisoner litigation in the courts. *See id.* (citing 141 Cong.Rec. H14078–02). Congress' purpose thus could be drastically thwarted if a prisoner could simply include a request for damages in his complaint and thereby bypass the exhaustion requirement and file his claim initially in federal court.

Finally, even if an administrative remedy does not include an award of money, resort to the administrative remedial procedures would have other beneficial effects. It

would, for example, allow the factual background to be developed and may result in the cessation of the allegedly offending conduct. *See Alexander* at 1327; *Funches v. Reish,* No. 97 CIV. 7611(LBS), 159 F.3d 1321, 1998 WL 695904 (S.D.N.Y. Oct. 5, 1998). These salubrious effects would follow from requiring exhaustion even in those cases where the administrative procedures do not include an award of money.

Those courts that have allowed a money damages claim to defeat the exhaustion requirement have not paid the requisite close attention to the statutory language in the current version of the PLRA, the prior version of the PLRA, or the purpose of Congress in enacting the PLRA. Thus, the Court finds that the PLRA requires exhaustion of a prisoner's claims seeking monetary damages, injunctive remedies, or both.

The exhaustion requirement has been held to be either a jurisdictional requirement or simply a threshold requirement, akin to a statute of limitations. *See, e.g. Alexander v. Hawk,* 159 F.3d 1321, 1326 (11th Cir.1998) (exhaustion is mandatory under new version of PLRA, not subject to waiver); *Wendell v. Asher,* 162 F.3d 887, 890 (5th Cir.1998) (exhaustion requirement is akin to a statute of limitations, subject only to the defense that remedy is not "available"); *Wright v. Morris,* 111 F.3d 414, 421 (6th Cir.1997) (exhaustion is not a jurisdictional requirement). The Seventh Circuit has not yet spoken to this issue nor decided whether the exhaustion requirement is jurisdictional.

In any case, Plaintiff must at least allege some facts from which the Court could infer that he has exhausted his administrative remedies in order to survive the motion to dismiss for lack of exhaustion. *See, e.g. Underwood v. Wilson,* 151 F.3d 292 (5th Cir. 1998) (noting that dismissal under 42 U.S.C. § 1997e(a) is made on the pleadings alone); *Moore v. Doan,* No. 98–2307, 1998 WL 887089, *4 (N.D.Ill., Dec.10, 1998) (under notice pleading, Plaintiff need not specifically allege exhaustion, though his complaint did at least mention his administrative grievance).

Here, Defendants have attached an affidavit from Deborah A. Hickey, coordinator of Administrative Remedies at Pekin, stating that Mr. Massey has filed no complaint or grievance through the administrative remedy program regarding the matters in this lawsuit. In response, Plaintiffs have not even alleged that Mr. Massey has availed himself of this remedy, but instead focus their attack on the speculative ultimate ineffectiveness of the administrative remedies.

Thus, it is clear that Plaintiff does not sufficiently allege in his complaint, as amended, that he has exhausted or even begun to exhaust his administrative remedies. Thus, the motion to dismiss Count I will be allowed.

## B. *MOTION TO DISMISS COUNT II*

Though the fourth amended complaint is a rather long and jumbled document, if read generously it seems that Plaintiff Otten asserts several claims therein, two individual claims and two claims of his patient-inmates: (1) a claim based on the First Amendment right to speak freely about the alleged deprivation of medical care to inmates at Pekin; (2) a claim based on an Eighth Amendment right to avoid violations of the patient-inmates' Eighth Amendment rights to medical care; (3) a claim based on the First Amendment right of access to the courts, alleging that the inmates were denied this right by Dr. Otten's termination; (4) an Eighth Amendment claim based on the alleged unconstitutional policy and practice of inadequate medical treatment given to inmates at Pekin.

In the motion to dismiss, Defendants argue that Dr. Otten may not bring his own claims in this Court because such claims must instead be heard by the Merit Systems Protection Board pursuant to the Civil Service Reform Act. Also, Defendants argue that Dr. Otten lacks standing to pursue the claims.

### 1. *Jurisdiction*

Defendants seek to dismiss Dr. Otten's claims due to a lack of jurisdiction. They specifically argue that in the Civil Service Reform Act ("CSRA") Congress has provided a comprehensive system for handling claims, including constitutional claims, that arise out of federal employment.[4] This con-

4. See, e.g. 5 U.S.C. § 1214(a)(1)(A) et seq.

gressional intent shows that the CSRA, rather than a *Bivens* remedy, is the appropriate remedial channel for employment grievances such as those alleged by Dr. Otten in this case. Therefore, it is argued, resort to a *Bivens* remedy is inappropriate.

The Supreme Court has determined that Courts may not always fashion a remedy for constitutional claims; instead, the Court has deferred to the legislature to fashion appropriate remedies for constitutional violations. *See e.g., Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). This hesitancy has sometimes been justified on separation of powers grounds, but it has also been noted that if the Court is to perform its functional role as protector of the Constitution, then Courts should sometimes be able to fashion remedies for Constitutional violations. *See* 68 S.Cal.L.Rev. 289, 316 (1995).

Nonetheless, following Supreme Court precedent, the Seventh Circuit has concluded that when Congress sets out a meaningful remedial scheme, courts may not supplement that scheme with a *Bivens* action. See *Feit v. Ward*, 886 F.2d 848, 853–855 (7th Cir. 1989); *Moon v. Phillips*, 854 F.2d 147 (7th Cir.1988). Nor should the courts allow a *Bivens* action to go forward when there are "special factors" counseling hesitation. *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). A particular remedial scheme may constitute a "special factor" under this analytical scheme. *See Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (noting that even if a remedial scheme did not afford "complete relief" it may nonetheless preclude a *Bivens* action).

In *Feit*, plaintiff, who was employed by the Forest Service, brought a *Bivens* action after he was terminated for his participation in a protest. The Seventh Circuit held that the remedial scheme provided by the Civil Service Reform Act ("CSRA") was sufficiently comprehensive to preclude resort to a *Bivens* action for damages. Since Feit was a seasonal employee, the remedies included an opportunity to file a complaint with the Office of Special Counsel ("OSC"), after which the Special Counsel is authorized to investigate

the charges or direct the head of the agency to do the investigation. See 5 U.S.C. § 1206(b)(3)(A); *Feit*, at 852. The OSC may recommend corrective action to the agency and may ultimately force compliance by filing an action with the Merit Systems Protection Board ("MSPB"). *Id.*

Similarly, in *Moon*, a former employee of the IRS claimed that he was harassed by supervisors in violation of his First Amendment right of freedom of speech. Plaintiff sought damages, attorney's fees and costs. The Seventh Circuit held that Moon had to resort to the remedies available in the Merit Systems Protection Board ("MSPB"). One of the remedies included in the scheme was judicial review of the administrative decision. *See Moon* at 152; See also *Paige v. Cisneros*, 91 F.3d 40, 44 (7th Cir.1996) (noting that consolidation of CSRA and creation of MSPB to deal with federal employee disputes "strengthens the conclusion that *Bivens* remedies have no place in individual personnel disputes arising out of federal employment.").

In this case, Dr. Otten claims that he was fired for speaking out about the treatment of prisoners, and that this termination constituted retaliation in violation of the First Amendment. He also seems to claim that he had an Eighth Amendment right to avoid violations of the inmates' Eighth Amendment rights, and that this right was violated.[5] The authorities cited above would give ample reason to require Dr. Otten to resort to his remedies available in the CSRA, but one additional issue must be decided before reaching that conclusion.

Though there is broad agreement that a money damages claim would not be allowed in the circumstances presented here, the courts are split on the issue of whether a claim for equitable relief should be denied as well. Some courts reason that the CSRA does not take away the traditional power of the courts to hear claims for equitable relief. *See Spagnola v. Mathis*, 859 F.2d 223 (D.C.Cir.1988); *Mitchum v. Hurt*, 73 F.3d 30 (3d. Cir.1995). Other courts focus on struc-

---

5. Again, the fourth amended complaint is so long and overlapping that the Court has trouble determining exactly what right is being asserted.

Read generously, however, this seems the best interpretation of the complaint.

tural concerns for separation of powers and conclude that Congress' clear intent in the CSRA was to mandate that the CSRA was to be the exclusive vehicle for federal employee claims related to federal employment. *See, e.g. Lombardi v. Small Bus. Admin.*, 889 F.2d 959, 962 (10th Cir.1989); *Stephens v. Department of Health & Human Services*, 901 F.2d 1571, 1576 (11th Cir.1990); Also see *Paige v. Cisneros*, 91 F.3d 40, 44 (7th Cir. 1996) (collecting cases, but not reaching a decision on the issue).

The parties in this case, however, do not acknowledge this division on the issue of whether equitable claims are barred under *Bush* and subsequent cases. In fact, Dr. Otten simply acknowledges in his brief that his claims for individual relief arising out of his employment must be dismissed pursuant to *Bush v. Lucas.* (Pl. Brief at p. 7). Even if Dr. Otten had not conceded the issue, however, the Court finds that the principle of separation of powers and proper deference to congressional intent, shown by the comprehensive remedies of the CSRA, both weigh in favor of the conclusion that a claim for equitable relief will not allow a plaintiff to bypass the CSRA and bring his claim instead in federal court.[6]

### 2. *Standing*

■ Defendants also argue that Dr. Otten lacks standing. Constitutional standing analysis consists of several overlapping but analytically distinct threads: injury, causation, and redressability. *See, e.g. Northeastern Florida Contractors v. Jacksonville*, 508 U.S. 656, 113 S.Ct. 2297, 2302, 124 L.Ed.2d 586 (1993). Defendant is not careful to distinguish the various aspects of standing that Dr. Otten lacks, but it seems that they primarily attack the idea that the relief requested would redress the injuries he sustained. Defendant asserts that since Dr. Otten is no longer employed at Pekin, any change in the policies or practices at Pekin would not affect him. Dr. Otten asserts, on the other hand, that a physician has standing to assert the constitutional rights of his patients.

When a defendant challenges standing via a motion to dismiss, the trial courts "must accept as true all material allegations of the complaint and must draw all reasonable inferences therefrom in favor of the plaintiff." *Retired Chicago Police Assoc. v. City of Chicago*, 76 F.3d 856, 862 (7th Cir.1996) (citing *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343, (1975); *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir.1993)).

Dr. Otten argues that a physician has standing to assert the Constitutional rights of his patients. *See* Warth, 422 U.S. at 508–10, 95 S.Ct. 2197; *Singleton v. Wulff*, 428 U.S. 106, 117–18, 96 S.Ct. 2868, 49 L.Ed.2d 826 (physicians permitted to assert patients' right to abortion where privacy considerations and imminent mootness of claim would prevent women themselves from asserting right). In *Singleton*, the Court noted that the physician is intimately involved with the patient's abortion decision. The Court also emphasized that the doctrine of imminent mootness and the need to protect the privacy of women seeking abortions worked in favor of allowing third party standing.

However, in a case very similar to the instant one, a district court refused to allow a physician standing to assert the Eighth Amendment rights of prison inmate-patients. *Carlen v. Dep't of Health Serv.*, 912 F.Supp. 35, 41–42 (E.D.N.Y.1996). In that case, a physician wished to assert the Eighth Amendment rights of the inmates to·receive proper medical care. The court in *Carlen* found that the inmate-patients could assert their own rights without serious difficulty. Cases such as *Carlen* recognize that abortion is a very special context and that third party standing should not be extended to all cases where a physician seeks to assert some constitutional violation that the patients could bring themselves.

Here, Plaintiff Otten asserts that the patients face obstacles to the assertion of their rights. But the only identified obstacles are the speculative possibility of mootness, the possibility that the Pekin administrators will simply revert to their former practices, and the risk of jury hostility to inmates. But

---

**6.** Plaintiff also seems to assert that jurisdiction extends to Dr. Otten's claims under 28 U.S.C. § 1367. They cite no case where such an exten- sion has been permitted. The Court finds no merit in this argument.

none of these concerns, even if proven, make this case unusual, and certainly do not make this case similar to the abortion cases cited above. These asserted obstacles are insufficient, as a matter of law, to allow Dr. Otten to assert the rights of the prisoners in this case.

In addition, Dr. Otten himself has been terminated from his employment and will thus not benefit from the injunctive and declaratory relief he requests for the alleged Eighth Amendment violations. Though he requests reinstatement for the First Amendment violations, the Court has already determined that he may not maintain that action because he must instead use the remedial scheme provided in the CSRA. The only remaining relief in the amended complaint is the request for injunctive/declaratory remedies.[7] Thus, because his injuries will not be redressed by the injunctive/declaratory relief requested and because he lacks third party standing to assert the rights of the inmates, the Court concludes that Dr. Otten lacks standing to pursue his claims in this case.

## C. Rule 56(f) Motion

■ Mr. Massey also has filed a motion styled "Rule 56(f) Motion to Deny Defendants' Application for Summary Judgment Asserted in Their Motion to Dismiss or Alternatively, to Conduct Hearing on the Application To Allow Plaintiff to Conduct Discovery." In this motion, he notes that Defendant's Motion to Dismiss included an affidavit from Ms. Deborah Hickey, Executive Assistant to the Warden of the Federal Correctional Institution in Pekin. This affidavit set out her statement that she was the coordinator of Administrative Remedies at Pekin and that Plaintiff had not requested any injunctive relief and had not exhausted the BOP's remedial procedure as set out in 28 C.F.R. § 542.10 *et seq.*

Mr. Massey contends that this affidavit has transformed the Motion to Dismiss into a Motion for Summary Judgment. Specifically, Mr. Massey asserts that the inclusion of the affidavit converts a Rule 12(b)(6) motion

into a Motion for Summary Judgment. He believes that the Court must now provide for more discovery so that Plaintiff may properly respond to the motion to dismiss, now converted into a motion for summary judgment. Mr. Massey particularly wishes to propound interrogatories in order to determine the adequacy of the remedy available to him. Plaintiff further asserts that he needs more discovery to determine which party has the burden to prove the existence of administrative remedies.

Defendants' Motion to Dismiss was not denominated as a Rule 12(b)(6) motion. Defendants clearly indicated that the motion to dismiss Mr. Massey's claims was brought as a motion to dismiss for lack of exhaustion. At any rate, it is clear that the plaintiff should allege some facts sufficient to infer that he has met the exhaustion requirement in the PLRA. The sufficiency of the allegations may be decided without engaging in a factual inquiry.

Here, Plaintiff has had ample opportunity to read the relevant regulations. *See* 28 C.F.R. § 542.10 et seq. He has not alleged that he has exhausted his administrative remedies, nor has he even asserted or implied that he has begun the administrative review process. The existence of the administrative remedies is clear from 28 C.F.R. § 542.10 et seq. Instead, Plaintiff seeks to conduct a broad based inquiry into the effectiveness of the remedies provided at Pekin. However, that inquiry, as noted in the discussion above, is not relevant. It is the existence, rather than the ultimate effectiveness, of the remedial procedures that is relevant. Thus, the Rule 56(f) Motion is DENIED.

## C. Motion to Amend

Plaintiffs have filed a motion to amend the fourth amended complaint in order to delete the injunctive damages claim asserted by Plaintiff Massey and assert a claim for damages. Plaintiffs also seek to amend their complaint after they have conducted further discovery.

---

**7.** Specifically, he requests an injunction to stop the use of the allegedly unconstitutional policies and practices at Pekin.

However, "the court should not allow the plaintiff to amend his complaint when to do so would be futile." *Moore v. Indiana,* 999 F.2d 1125, 1128 (7th Cir.1993) (citing *Villa v. City of Chicago,* 924 F.2d 629, 632 (7th Cir. 1991)) (citing *Foman v. Davis,* 371 U.S. 178, 183, 83 S.Ct. 227, 9 L.Ed.2d 222(1962) and *Williams v. United States Postal Service,* 873 F.2d 1069, 1072 (7th Cir.1989)).

In light of the dismissal of both Counts of the Complaint, the proposed amendment will not cure the defects in the complaint. Even if a money damages claim were added, the exhaustion requirement would still apply, as already indicated. Thus, the Motion for Leave to Amend is denied.

## IV. CONCLUSION

Mr. Massey's claims must be dismissed because he has failed to allege that he has filed or exhausted any sort of administrative grievance or availed himself of any administrative procedures as required by the PLRA. Thus, his claim in this Court must be dismissed.

Also, Dr. Otten may not bring his *Bivens* claims arising out of his employment due to the comprehensive remedial scheme provided by Congress for those claims. In addition, Dr. Otten lacks standing to pursue his claims.

*Ergo,* Defendants' Motion to Dismiss is ALLOWED. Count I is dismissed without prejudice for failure to allege exhaustion of administrative remedies. Count II is dismissed for lack of jurisdiction and lack of standing.

Plaintiff's Rule 56(f) Motion is DENIED. Plaintiff's Motion for Leave to Amend is DENIED. The pending motion to compel is DENIED AS MOOT.