**Benjamin F. SALLEE, Jr., Plaintiff,**

v.

**Mr. JOYNER, Supervisor of Education, Mr. Cockran, Education Dept., Lt. Wells, Lieutenant in Charge, Mr. Banks, Case Manager, and Mr. Bradford, Unit Manager, Defendants.**

### No. 2:98CV1167.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 23, 1999.

Benjamin F. Sallee, Jr., Springfield, MO, pro se.

### *OPINION AND FINAL ORDER*

JACKSON, District Judge.

Plaintiff, a federal inmate, brings this *pro se* action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), to redress an alleged violation of his constitutional rights.

## I. PROCEDURAL HISTORY

On November 24, 1998, the court dismissed plaintiff's complaint due to his failure to exhaust his administrative remedies available at F.C.I. Petersburg. The court informed plaintiff that F.C.I. Petersburg's refusal to award monetary damages through the inmate grievance process does not excuse plaintiff's responsibility to exhaust his administrative remedies before filing an action in federal court.[1] On November 30, 1998, plaintiff filed a motion for reconsideration of the dismissal of his case. Plaintiff argues that he does not have to avail himself of the administrative grievance procedures available at F.C.I. Petersburg because he filed a *Bivens* claim for monetary relief. Plaintiff argues that 42 U.S.C. § 1997e(a) only requires inmates to exhaust administrative remedies if the particular relief sought can be obtained through the institutional grievance process. 42 U.S.C. § 1997e(a)(West Supp. 1998), amended by the Prison Litigation Reform Act (PLRA), Pub.L. No. 104–134, 110 Stat. 1321 (1996). Plaintiff claims that as he is seeking monetary relief, which is not an available remedy through the institutional grievance process, he does not have to exhaust his administrative remedies at F.C.I. Petersburg. Plaintiff cites *Garrett*, 127 F.3d at 1263 and *White v. Fauver*, 19 F.Supp.2d 305, 317 (D.N.J. 1998) as support for his motion. Plaintiff's motion raises an issue of first impression for this court.

## II. DISCUSSION

### A. *Bivens Claims are Subject to the PLRA's Exhaustion Requirements*

Plaintiff's motion first requires the court to determine whether the PLRA applies to *Bivens* claims. In *McCarthy v. Madigan*, 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), the Supreme Court held that federal inmates filing constitutional claims for monetary damages do not have to exhaust their administrative remedies. *McCarthy*, 503 U.S. at 149, 112 S.Ct. 1081. At the time of the *McCarthy* decision, federal law only required state inmates filing civil rights actions pursuant to 42 U.S.C. § 1983 to exhaust administrative remedies. The Civil Rights Act for Institutionalized Persons (CRIPA) provided that:

> (1) Subject to the provisions of paragraph (2), in any action brought pursuant to section 1983 of this title by an adult convicted of a crime confined in any jail, prison, or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue such case for a period not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective remedies as are available.

> (2) The exhaustion of administrative remedies under paragraph (1) may not be required unless the Attorney General has certified or the court has determined that such administrative remedies are in substantial compliance with the minimum acceptable standards promulgated under subsection (b) of this section or are otherwise fair and effective.

42 U.S.C. § 1997e(a)(1)(1994). The *McCarthy* Court determined that Congress did not intend to impose CRIPA's exhaustion requirements on federal inmates filing constitutional claims for monetary relief. *McCarthy*, 503 U.S. at 150, 112 S.Ct. 1081.

Congress, however, enacted the PLRA after the *McCarthy* decision. The PLRA amended the exhaustion requirements of CRIPA. The PLRA provides that "[n]o action shall be brought with respect to

1. Inmates confined at institutions operated by the Bureau of Prisons (BOP) must grieve their claims relating to any aspect of their confinement through the Administrative Remedy Program. Inmates seeking monetary relief can grieve their claims through the Administrative Remedy Program, but the institution cannot award monetary relief. See *Garrett v. Hawk*, 127 F.3d 1263, 1266 (10th Cir.1997) (citing 28 C.F.R. § 542.12).

prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a)(emphasis added). The PLRA's amendments to § 1997e thus resulted in several significant changes. First, the PLRA expanded the types of claims that must be grieved to include not only § 1983 claims, but also claims arising under "any other Federal law." *Id.* Second, the PLRA's exhaustion requirements are now mandatory rather than optional. *See Moore v. Smith,* 18 F.Supp.2d 1360, 1363 (N.D.Ga.1998)(noting that amendments to § 1997(e) replaced language allowing courts to enforce exhaustion requirements if "appropriate and in the interests of justice" with mandatory language of "[n]o action shall be brought"). Third, the courts are no longer required to determine if state administrative grievance procedures are in compliance with the Attorney General's standards. *See id.*

■ Plaintiff's *Bivens* claim is subject to the exhaustion requirements of the PLRA. Congress specifically amended § 1997e to require federal inmates to exhaust their administrative remedies before filing suit in federal court. *See* 141 Cong. Rec. H14078–02, H14105 (daily ed. Dec. 6, 1995) (statement of Rep. Lobiondo). As Rep. Lobiondo stated:

> [t]he real problem with these cases came with the Court's decision in 1992 that an inmate need not exhaust the administrative remedies available prior to proceeding with a Bivens action for money damages only. *McCarthy v. Madigan,* 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). This decision was made without the benefit of any legislative guidance and the Court made that point very clearly in its opinion, almost to the point of asking that Congress to do

something. Since 1993 there has been a total of 1,365 new Bivens cases filed in Federal court tying up the time of judges and lawyers for the Bureau of Prisons at a time when we already have overcrowded dockets.

> In order to address the problem of Bivens actions, I introduced H.R. 2468, the Prisoner Lawsuit Efficiency Act ("P.L.E.A."). This bill makes it clear that administrative exhaustion be imposed in all actions arising under the Bivens case. In H.R. 667, the House adopted a similar provision to that of the P.L.E.A. by requiring the exhaustion of administrative remedies for those prisoners bringing suit under 42 U.S.C. § 1979[sic] (the Civil Rights for Institutionalized Persons Act ("CRIPA")).

> I am very pleased to say that I have worked with the conferees of H.R.2076 to ensure that the prison litigation reform measures address the Bivens issue. The new administrative exhaustion language in H.R.2076 will require that all cases brought by Federal inmates contesting any aspect of their incarceration be submitted to administrative remedy process before proceeding to court.

*Id.* (emphasis added).[2]

Therefore, federal inmates filing *Bivens* actions must avail themselves of available institutional grievance procedures before filing suit in federal court. *See Garrett,* 127 F.3d at 1265 (10th Cir.1997) (finding that exhaustion requirements apply to *Bivens* actions); *Alexander S. v. Boyd,* 113 F.3d 1373, 1380 (4th Cir.1997) (noting that PLRA imposes exhaustion requirements for inmates bringing lawsuits under § 1983 or any other Federal law); *Gibbs v. Bureau of Prison Office,* 986 F.Supp. 941, 944 (D.Md.1997)(dismissing *Bivens* action filed by federal inmate for money damages for

---

**2.** President Clinton vetoed H.R.2076 on December 19, 1995. H.R. Conf. Rep. No. 104–537, at 2 (1996). President Clinton enacted the PLRA by signing into law H.R. 3019, the "Omnibus Consolidated Rescissions and Appropriations Act of 1996" on April 26, 1996. H.R. 3019, 104th Cong. § 8 (1996). H.R. 3019 imposes the same exhaustion requirements as H.R.2076.

failure to grieve claims through institutional grievance process). While it is clear that federal inmates must grieve their *Bivens* claims through the institutional grievance process before filing an action in federal court, many courts have not agreed on whether the PLRA requires inmates to grieve their claims for monetary damages through the institutional grievance process.

## B. SECTION 1997e(a) and CLAIMS FOR MONETARY RELIEF

Plaintiff argues that he does not have to grieve his *Bivens* claim because it is for money damages. Plaintiff contends that the PLRA does not impose exhaustion requirements on inmates seeking money damages because such a remedy is not available through the institutional grievance process. Indeed, the requirement that inmates must exhaust "administrative remedies as are available" has been subject to various interpretations by the courts. Some courts have found that the phrase "available administrative remedies" does not include claims for money damages when the institution cannot provide monetary relief. *See, e.g., Whitley v. Hunt,* 158 F.3d 882, 887 (5th Cir.1998) (for federal inmate); *Lunsford v. Jumao-As,* 155 F.3d 1178, 1178 (9th Cir.1998)(same); *Garrett,* 127 F.3d at 1265 (same); *Fauver,* 19 F.Supp.2d at 317 (for state inmate); *Hollimon v. DeTella,* 6 F.Supp.2d 968, 970 (N.D.Ill.1998) (same); *Harris v. Mugarrab,* No. 97 C 3587, 1998 WL 246450, at *3 (N.D.Ill. May 1, 1998)(unpublished)(same); *Polite v. Barbarin,* No. 96 Civ. 6818, 1998 WL 146687, at *2 (S.D.N.Y. Mar. 25, 1998)(unpublished)(same); *Jackson v. De-Tella,* 998 F.Supp. 901, 904 (N.D.Ill.1998)(unpublished)(same); *Sanders v. Elyea,* No. 96 C 4559, 1998 WL 67615, *5-6 (N.D.Ill. Feb. 10, 1998) (same)(unpublished); *Russo v. Palmer,* 990 F.Supp. 1047, 1050 (N.D.Ill.1998) (same); *Lacey v. C.S.P. Solano Med. Staff,* 990 F.Supp. 1199, 1205 (E.D.Cal.1997) (same). These courts reasoned that Congress did not intend to require inmates to grieve their claims for monetary relief when the institutional grievance process could not award that type of relief. In such situations, monetary damages would not be an "available" remedy within the meaning of § 1997e(a). *Moore,* 18 F.Supp.2d at 1363. Because no "available" remedy exists, it would be "an exercise in futility" to force inmates to utilize the institutional grievance process. *Id.* (citing *Jackson,* 998 F.Supp. at 904).

Other courts have found that inmates must grieve their claims for money damages through the institutional grievance process, even if the institution cannot award monetary relief. *See, e.g., Alexander v. Hawk,* 159 F.3d 1321, 1327 (11th Cir.1998) (holding that federal inmate seeking monetary and injunctive relief must avail himself of institutional grievance procedures prior to filing suit in federal court); *Beeson v. Fishkill Correctional Facility,* 96 No. Civ. 7677, 1998 WL 856294, at *13 (S.D.N.Y. Dec. 10, 1998) (holding that state inmate seeking monetary relief must exhaust administrative remedies before filing lawsuit); *Funches v. Reish,* No. 97 CIV. 7611, 1998 WL 695904, at *9 (S.D.N.Y. Oct. 5, 1998) (finding that PLRA's exhaustion requirements applies to *Bivens* actions seeking only monetary relief); *Moore,* 18 F.Supp.2d at 1364 (holding that state inmate seeking monetary relief must avail himself of prison grievance procedures); *Bearden v. Godfrey,* No. C 98-2294, 1998 WL 456294 (N.D.Cal. Jul. 27, 1998)(same); *Spence v. Mendoza,* 993 F.Supp. 785, 788-89 (E.D.Cal.1998)(concluding that state inmate seeking monetary and declaratory relief must exhaust claims through administrative grievance process). *See also Blas v. Endicott,* 31 F.Supp.2d 1131, at 1133 n. 5 (E.D.Wis.1999)(disagreeing with majority position that PLRA does not require administrative exhaustion if inmate seeks monetary relief).

Only one district court in this circuit has addressed the issue of whether § 1997e(a) requires inmates seeking monetary relief

to exhaust their administrative remedies. *See Gibbs,* 986 F.Supp. at 944 (holding, without discussion, that *Bivens* claims for monetary relief are subject to PLRA's exhaustion requirements). For the following reasons, the court FINDS that the proper interpretation of the PLRA's exhaustion requirement is to require inmates seeking monetary relief to exhaust their administrative remedies. Therefore, the court declines to follow the line of cases holding that the PLRA does not require administrative exhaustion for monetary claims.[3]

The phrase "administrative remedies as are available" does not require effective administrative remedies. Instead, it requires inmates to utilize institutional grievance procedures made available by the prison system. Prior to the enactment of the PLRA, the Supreme Court made it clear in *McCarthy* that CRIPA's exhaustion requirements of "plain, speedy, and effective administrative remedies as are available" meant that exhaustion was not required where the institution could not award the relief requested. *McCarthy,* 503 U.S. at 150–51 & n. 4, 112 S.Ct. 1081. The amendments to § 1997e, however, deleted the "plain, speedy, and effective" requirement and instead require "such administrative remedies as are available." 42 U.S.C. § 1997e(a). The omission of the "plain, speedy, and effective" requirement from the PLRA's exhaustion requirement evidences Congress' intent for courts to focus on whether the institution has an available grievance system to resolve inmate grievances, rather than the effectiveness of the administrative remedies. *See*

*Alexander,* 159 F.3d at 1326; *Moore,* 18 F.Supp.2d at 1364; *Mendoza,* 993 F.Supp. at 788. Therefore, all inmates should avail themselves of the institutional grievance process regardless of the type of relief sought.

To hold otherwise, would allow inmates to circumvent Congress' clear mandate requiring inmates to exhaust administrative remedies before filing suit in federal court. *See McCarthy,* 503 U.S. at 144, 112 S.Ct. 1081 (citing *Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 579, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989)(stating that where Congress specifically mandates exhaustion, exhaustion is required)). In enacting the PLRA, Congress believed that mandating exhaustion was appropriate given "the burden that [inmate] cases place on the Federal court system, the availability of administrative remedies, and the lack of any merit of many of the claims filed under 42 U.S.C. § 1983." 141 Cong. Rec. S7498–01, S7527 (daily ed. May 25, 1995)(statement of Sen. Kyl). Imposing the PLRA's exhaustion requirements only on claims for non-monetary relief invites inmates to request monetary damages in order to bypass the PLRA's exhaustion requirements. *See Moore,* 18 F.Supp.2d at 1364. In fact, the majority of prisoner complaints filed in this court request monetary relief. Such an interpretation of the PLRA's exhaustion requirements would result in only a few inmates being required to avail themselves of the institution's grievance procedures before filing suit in federal court. Certainly, this was not

---

**3.** Plaintiff relies on *Garrett v. Hawk,* 127 F.3d 1263 (10th Cir.1997), to support his motion for reconsideration. In *Garrett,* a federal inmate brought a *Bivens* claim for monetary damages. The government conceded that the federal institution where plaintiff was incarcerated would have rejected the inmate's claim for monetary damages as an "improper subject matter for administrative review." *Garrett,* 127 F.3d at 1266. Accordingly, the court found that plaintiff did not have any "available" administrative remedies to exhaust. *Id.* at 1267. The *Garrett* opinion is unpersuasive to this court. The fact that fed-

eral institutions may dismiss inmate grievances for monetary relief as an improper matter for review does not warrant ignoring Congress' clear mandate requiring administrative exhaustion. This court would not dismiss an inmate's complaint for failure to fully exhaust his administrative remedies under § 1997e(a) if the institution found his claims for monetary damages to be an improper matter for review. Instead, the court would allow such complaints to go forward. In the present case, however, plaintiff never attempted to grieve his claims through the institutional grievance process.

Congress' intent in enacting the PLRA. *See* 141 Cong. Rec. H14078–02, H14105 (daily ed. May 25, 1995) (statement of Rep. Lobiondo)(noting that purpose of PLRA's administrative exhaustion requirements is to deter filing of frivolous prisoner lawsuits).

## C. POLICY CONSIDERATIONS UNDERLYING THE REQUIREMENT OF EXHAUSTION OF ADMINISTRATIVE REMEDIES

The PLRA's legislative history reveals numerous policy considerations behind the requirement of administrative exhaustion. *See* 141 Cong. Rec. H14078–02, H14105 (daily ed. Dec. 6, 1995) (statement of Rep. Lobiondo). Requiring inmates to exhaust their administrative remedies regardless of the type of relief sought benefits the inmates, the institution, and the courts. As stated in *McCarthy,* administrative exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy,* 503 U.S. at 145, 112 S.Ct. 1081. Agencies responsible for enforcing rules and procedures should have the opportunity to "correct its own mistakes" with respect to the programs it administers before it is haled into court. *Id.* Moreover, prisons have a "substantial interest in encouraging internal resolution of grievances and in preventing the undermining of its authority by unnecessary resort by prisoners to the federal courts." *Id.* at 155, 112 S.Ct. 1081. Indeed, filing grievances alerts the institution to inmate concerns and unlawful conduct within the institution so that the institution may properly address those issues. Armed with this knowledge, the institution can work to provide a safer environment for its staff and inmates. In addition, institutional grievance procedures allow the institution to define the institution's rules, policies, and procedures for inmates and staff members as well as correct any mistakes made by staff members in implementing such rules, policies, and procedures.

In the present case, plaintiff claims that the institution placed him in a special housing unit (SHU) for refusal to participate in additional schooling. Plaintiff states that his records indicate that he already had 720 hours of school when the law only requires 240 hours. Plaintiff argues that defendants violated his constitutional rights by not investigating his allegations.[4] To the contrary, plaintiff should have availed himself of the institutional grievance process. Plaintiff's claims over the length of time that the institution required him to participate in school is a matter that could have been satisfactorily resolved through the institutional grievance process. If plaintiff's claim had any merit and had he filed a grievance, the institution could have resolved the matter internally as well as corrected any mistakes made in responding to plaintiff's complaint.[5] Moreover, the institution could have also taken any necessary measures against defendants for any improper conduct.

Likewise, the courts benefit from a system that requires inmates to attempt to resolve their grievances before filing suit in federal court. First, institutions that are able to resolve inmate grievances internally will result in fewer inmate cases taxing a system already overburdened by the increase in prison and non-prison litigation. *See* 141 Cong. Rec. S7498–01, S7526 (daily ed. May 25, 1995)(statement of Sen. Kyl). In addition, the administrative grievance process often assists the

---

**4.** The court notes that it could have dismissed plaintiff's complaint as legally frivolous under 28 U.S.C. § 1915A. Upon receiving plaintiff's complaint, however, the court elected to dismiss plaintiff's complaint without prejudice for failure to grieve under 42 U.S.C. § 1997e(a).

**5.** As previously stated, if an institution elects not to review an inmate's claim solely because he or she seeks monetary relief, this court would not dismiss such claims under § 1997e(a)for failure to exhaust administrative remedies.

courts in evaluating prisoner complaints by clarifying the nature of the prisoners' claims. *See* 141 Cong. Rec. H14078–02, H14105 (daily ed. May 25, 1995) (statement of Rep. Lobiondo) (stating that requiring administrative exhaustion will "provide for early resolution of the problem, ... reduce degree of fact-finding so that when or if the matter reaches Federal court there will be a record upon which to proceed in a more efficient manner.").

Finally, inmates also benefit from utilizing the institutional grievance process. By availing themselves of institutional grievance procedures, inmates learn about the institution's rules, policies, and procedures. In addition, inmates are also able to alert officials to problems and potentially unlawful conduct within the institution. Moreover, inmates may be able to resolve their grievances through the institutional grievance process without having to expend additional time and money by litigating in federal court. In that regard, inmates may realize that monetary damages are unnecessary or that monetary damages would not fully compensate the inmate for his injuries. Ultimately, the slight inconvenience that inmates must endure by utilizing the institutional grievance process before filing suit in federal court is far outweighed by the benefits that the institutional grievance process provides to the institution, the courts, and the inmates. Requiring inmates to exhaust their administrative remedies is thus not an "exercise in futility," but is rather a necessary measure to create safe and effective institutions. *See Moore*, 18 F.Supp.2d at 1363 (citing *Jackson*, 998 F.Supp. at 904). Accordingly, the court DENIES plaintiff's motion to reconsider the dismissal of his complaint.

The plaintiff is ADVISED that he may appeal from this opinion and final order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within thirty (30) days from the date of this opinion and final order.

The Clerk is DIRECTED to send a copy of this opinion and final order to plaintiff.

IT IS SO ORDERED.