Kola ODUMOSU, Plaintiff,

v.

Warden KELLER; Mr. Chapman, Associate Warden; and Mr. Stern, Associate Warden, All Employees at FCI Raybrook, Defendants.

No. 98–CV–892(LEK/DRH).

United States District Court, N.D. New York.

June 17, 1999.

Kola Odumosu, Elkton, OH, pro se.

Charles E. Roberts, Ass't. U.S. Attorney, Syracuse, NY, for defendants.

### DECISION AND ORDER

KAHN, District Judge.

Plaintiff brings this action pursuant to *Bivens v. Six Unknown Named Agents of*

*the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), alleging violations of his rights under the Fifth and Eighth Amendments to the United States Constitution. Plaintiff seeks monetary relief and a declaration that his rights were violated. Presently pending is Defendants' motion to dismiss the complaint. The matter comes before this Court following a Report–Recommendation filed on May 17, 1999 by the Honorable David R. Homer, Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern District of New York. No objections to the Report–Recommendation have been raised. Therefore, this Court may reject its recommendations only if they are clearly erroneous or contrary to law. *See* Fed.R.Civ.P. 72(b), Advisory Committee Notes.

Magistrate Judge Homer recommended that the motion be granted except as to Plaintiff's claim of an unconstitutional failure to protect. He found that the Plaintiff's claims alleging negligence and an improper classification of his security status did not present violations of constitutional rights, that Plaintiff's allegation of a single alleged racial comment by a non-defendant was insufficient to establish a claim of racial discrimination, and that Plaintiff's Eighth Amendment claims for inadequate medical treatment failed to allege personal involvement by any of the Defendants. He therefore recommended that these claims be dismissed. After examining the record, this Court finds that the recommendations are not clearly erroneous or contrary to law and therefore adopts this portion of the Report–Recommendation.

Magistrate Judge Homer recommended that Plaintiff's fourth claim alleging an unconstitutional failure to protect him from harm should not be dismissed. Specifically, he rejected Defendants' argument that the claim should be dismissed due to Plaintiff's failure to exhaust administrative remedies, finding that under *McCarthy v. Madigan,* 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), an inmate is not required to exhaust such remedies before bringing a *Bivens* action. This Court finds, however, that Plaintiff was required to exhaust administrative remedies, and that his failure to do so mandates dismissal of his failure-to-protect claim without prejudice. Plaintiff may renew his claim once he has satisfied the exhaustion requirement.[1]

■ Although the Supreme Court held in *McCarthy v. Madigan,* 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) that a federal prisoner seeking only monetary relief need not pursue administrative remedies prior to filing a *Bivens* action, *id.* at 147, 112 S.Ct. at 1087, *McCarthy* has been superseded by an amendment to 42 U.S.C. § 1997e (1994), passed as part of the Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104–134, § 803, 110 Stat. 1321. Section 1997e as amended provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.A. § 1997e (Supp.1998). "Having expanded the [§ 1997e] exhaustion requirement to include actions brought 'under any other Federal law,' Congress now plainly requires federal prisoners to exhaust available administrative remedies prior to bringing *Bivens* claims." *Whitley v. Hunt,* 158 F.3d 882, 886 (5th Cir.1998). Thus, dismissal of Plaintiff's claim is required if there are available administrative procedures which constitute "remedies" as that term is meant by § 1997e and which Plaintiff has not exhausted.

The Bureau of Prisons ("BOP") has established an administrative procedure re-

---

1. Magistrate Judge Homer also rejected Defendants' arguments that the claim should be dismissed for lack of proper service and for legal insufficiency. Because the issue of exhaustion is dispositive, this Court does not address these other arguments.

ferred to as the Administrative Remedy Program ("ARP") by which federal "inmates may seek formal review of an issue which relates to any aspect of their confinement ... if less formal procedures have not resolved the matter." 28 C.F.R. § 542.10 (1998). Defendants allege without dispute that Plaintiff did not avail himself of this grievance procedure. Plaintiff's claim must be therefore be dismissed for failure to exhaust if the ARP constitutes an "available remedy" under § 1997e.

■ Two aspects of the procedure are relevant to determining if the ARP is an available remedy: whether the ARP provides an avenue for grieving the particular subject matter, and whether it provides the relief Plaintiff is seeking. As to the first aspect, the ARP procedure has been found to allow the administrative grieving of Eighth Amendment claims including the failure to provide adequate medical care, *see Roche–Despaigne v. True*, No. 95–3394–RDR, 1998 WL 682260, at *2 (D.Kan. Sept.10, 1998), and allegation of malicious force, *see Terrell v. Brewer*, 935 F.2d 1015, 1018–19 (9th Cir.1991), as well as a broad variety of other claims. *See Aenk v. Richter*, No. C 98–802 SI, 1998 WL 381987, at *1 (N.D.Cal. June 29, 1998) (improper placement in segregation, denial of access to religious services, interference with mail, confiscation of documents, and interference with communications with a lawyer). This procedure was therefore available to address a grievance alleging a failure to protect. However, as to the second aspect, the ARP does not authorize prison officials to grant the monetary and declaratory relief which Plaintiff seeks in this action. *See Whitley v. Hunt*, 158 F.3d 882, 887 (5th Cir.1998); *Lunsford v. Jumao–As*, 155 F.3d at 1178 (finding that ARP provides only injunctive relief). Thus, the specific question is whether, to be a "remedy," a procedure need merely provide an avenue for adjudicating the particular grievance at issue or whether it must also provide for the specific form of redress which the inmate is seeking.

Courts have taken numerous paths in answering this question. Some courts have held that a prisoner seeking only money damages need not exhaust grievance procedures which only provide for injunctive relief. *See Whitley v. Hunt*, 158 F.3d 882, 887 (5th Cir.1998); *Lunsford v. Jumao–As*, 155 F.3d 1178, 1178 (9th Cir. 1998). Others have held that an inmate must exhaust where the grievance procedure could provide some part of the ultimate relief that the inmate seeks in court, i.e. where an inmate seeks both monetary and injunctive relief. *See Alexander v. Hawk*, 159 F.3d 1321 (11th Cir.1998) (inmate required to exhaust when seeking monetary and injunctive relief), *reh. and reh. en banc denied*, 172 F.3d 884 (1999). Still others find that a claim must be dismissed even if it seeks relief entirely unavailable administratively. *See Spence v. Mendoza*, 993 F.Supp. 785, 788–89 (E.D.Cal.1998) (inmate required to exhaust when seeking monetary and declaratory relief); *Beeson v. Fishkill Corr. Facility*, 28 F.Supp.2d 884 (S.D.N.Y.1998) (inmate required to exhaust when seeking only monetary relief); *Sallee v. Joyner*, 40 F.Supp.2d 766, 768–70 (E.D.Va.1999) (same, and collecting cases). Precedent does not therefore give a clear answer as to when a grievance procedure constitutes a "remedy." This Court finds that based on the legislative history, the best interpretation of § 1997e is one which requires exhaustion even where an inmate only seeks relief which cannot be obtained through administrative procedures.

■ To answer a question of statutory construction, a court should "look first to 'the language of the statute itself because, when looking at its language, a court should presume that the statute says what it means.'" *Motor Vehicle Mfrs. Ass'n of the United States, Inc., v. N.Y. State Dep't of Envtl. Conservation*, 17 F.3d 521, 531 (2d Cir.1994) (quoting *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993)). However, "[e]ven when the meaning of language seems ap-

parent, it must be remembered that we are attempting to ascertain Congress' purpose; where ambiguity resides in a statute, legislative history and other tools of interpretations may be employed to determine legislative purpose more perfectly." *Id. See also Strougo on behalf of the Brazil Fund, Inc. v. Scudder, Stevens & Clark, Inc.,* 964 F.Supp. 783, 797 n. 3 (S.D.N.Y. 1997) ("In the event that the statute does not resolve the matter, courts consider other factors in determining congressional intent: the legislative history; the contemporary legal context in which Congress acted; and general rules of statutory construction."). Here, the meaning of the phrase "remedies as are available" is clearly subject to various interpretations, as demonstrated by the significant fracture in court opinion. Accordingly, this Court looks beyond the words to the legislative history in an attempt to discern Congress's intent.

The Congressional Record provides strong evidence that Congress did not intend the exhaustion requirement to be limited to cases where administrative procedures could provide the particular form of relief that is sought in the courts. First, a sponsor of an earlier bill offering an identical exhaustion amendment stated expressly the exhaustion requirement was to apply to all claims. *See* 40 F.Supp.2d 766, 767. He explained that

> [t]he real problem with [*Bivens* ] cases came with the [Supreme] Court's decision in 1992 that an inmate need not exhaust the administrative remedies available prior to proceeding with a Bivens action for money damages only. *McCarthy v. Madigan,* 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). This decision was made without the benefit of any legislative guidance and the Court made that point very clearly in its opinion, almost to the point of asking that Congress do something. Since 1993 there has been a total of 1,365 new Bivens cases filed in Federal court tying

up the time of Federal judges and lawyers for the Bureau of Prisons at a time when we already have overcrowded dockets.

. . .

> This bill makes it clear that administrative exhaustion be imposed in *all actions arising under the Bivens case.* . . . The new administrative exhaustion language . . . will require that *all cases brought by Federal inmates contesting any aspect of their incarceration* be submitted to administrative remedy process before proceeding to court.

*See* 1995 WL 716064 (Cong.Rec.), 141 Cong.Rec. H14078–02, \*H14105 (daily ed. Dec. 6, 1995) (statement of Rep. Lobiondo) (emphasis added). This statement of intent is difficult to reconcile with the interpretation that exhaustion does not apply to claims for monetary damages. In this Court's experience, the majority of prisoner civil rights actions seek solely monetary relief. Even in cases where injunctive relief would be justified, an inmate might still avoid the exhaustion bar by simply declining to request such relief. Thus, an exhaustion requirement that was intended to apply in "all actions arising under the *Bivens* case" would in practice apply to only a very few.

Representative Lobiondo also explained that an important purpose of the amended section 1997e was to " 'curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court.' " *Alexander v. Hawk,* 159 F.3d 1321, 1324 (11th Cir.1998) (quoting 141 Cong. Rec. H1472–06, \*H1480 (daily ed. Feb. 9, 1995)). However, claims seeking only damages are at least as likely to be frivolous or malicious as claims seeking equitable remedies. Congress's intent would therefore be ill-served by an interpretation that limits exhaustion to equitable claims. Indeed, if a prisoner could avoid the exhaustion requirement for a frivolous or malicious claim simply by limiting requested relief to monetary and

declaratory relief, Congress's intent would be substantially defeated. Thus, the express statements of the amendment's purpose demonstrate that Congress intended the exhaustion requirement to apply to suits seeking relief unavailable administratively.

■ A comparison of the amended version of the exhaustion requirement with the old version further supports this conclusion. In amending § 1997e, Congress changed the exhaustion requirement from one limited to the exhaustion of such "plain, speedy, and effective administrative remedies as are available" to one which requires exhaustion of all "available remedies" without regard to whether such remedies are plain, speedy or effective. *Compare* 42 U.S.C. § 1997e(a)(1) (1994) *with* 42 U.S.C.A. § 1997e(a) (West Supp.1998);[2] *see also Alexander,* 159 F.3d at 1326; *Massey v. Helman,* 35 F.Supp.2d 1110, 1113 (C.D.Ill.1999). "[A]n amendment to a statute that omits certain provisions almost always reflects Congress' intent to repeal the omitted provisions." *American Land Title Ass'n v. Clarke,* 968 F.2d 150, 152 (2d Cir.1992). The change to the exhaustion requirement should thus be construed as a deliberate repeal of the "plain, speedy and effective" limitation.

To determine the significance of Congress's repeal of the "effective" term, it is instructive to consider the Supreme Court's interpretation of that term in *McCarthy* because the legislative record indicates that Congress was prompted to amend the exhaustion requirement at least in part because of *McCarthy. See Sallee,* 40 F.Supp.2d at 767. In that case, the majority stated several circumstances in which an agency is not "empowered to grant effective relief." *Id.,* 503 U.S. at 147, 112 S.Ct. 1081. One such circumstance is when "an agency ... lack[s] authority to grant the type of relief requested." *Id.* at 148, 112 S.Ct. 1081. The Court specifically noted: "[I]n contrast to the absence of any provision for the award of money damages under the Bureau's general grievance procedure, [§ 1997e] conditions exhaustion on the existence of 'effective administrative-remedies.'" *Id.* at 150, 112 S.Ct. 1081. In concurrence, Chief Justice Rehnquist, joined by Justices Scalia and Thomas, made the point even more clearly: "[I]n cases such as this one where prisoners seek monetary relief, the Bureau's administrative remedy furnishes no effective remedy at all, and it is therefore improper to impose an exhaustion requirement." *Id.* at 156, 112 S.Ct. 1081 (Rehnquist, C.J., concurring). Congress's repeal of the term "effective" following *McCarthy* thus strongly suggests that Congress intended the repeal to clarify that exhaustion was required even where an inmate seeks relief unavailable administratively. In sum, the legislative history is a powerful indication that Congress intended available "remedies" to mean any available administrative procedure which can adjudicate the allegations of an inmate's complaint regardless of whether it can provide the specific remedy which the inmate requests.

This interpretation has been rejected by some courts on the grounds that Congress could not have "intended to impose meaningless barriers to suit." *White v. Fauver,*

---

2. The pre-PLRA version reads in relevant part:

> [I]n any action brought pursuant to section 1983 of this title by an adult convicted of a crime confined in any jail, prison, or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue such case for a period not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available.

42 U.S.C. § 1997e(a)(1) (1988). The amended version reads, in its entirety:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (West Supp.1998).

19 F.Supp.2d 305, 317 (D.N.J.1998). If the exhaustion procedure were truly meaningless in the context of an inmate pursuing monetary relief unavailable through administrative remedies, this argument might have some force. However, requiring exhaustion where it cannot provide an inmate with the form of relief pursued in court is not meaningless. First, administrative exhaustion provides important benefits to the judicial process, by producing a developed record, potentially in a more proximate time than a federal action would allow, and thus assisting the judiciary in isolating meritorious actions from frivolous ones early in the litigation. *See Alexander v. Hawk,* 159 F.3d at 1327–28; *Massey,* 35 F.Supp.2d at 1114; *Sallee,* 40 F.Supp.2d at 771. This benefit, far from being irrelevant to Congress's intent, was explicitly cited as a motivating factor behind the amendment. *See* 1995 WL 716064 (Cong.Rec.), 141 Cong.Rec. H14078–02, *H14105 (daily ed. Dec. 6, 1995) (statement of Rep. Lobiondo) ("By returning these cases to the Federal Bureau of Prisons, ... we will provide some degree of fact-finding so that when or if the matter reaches Federal court there will be a record upon which to proceed in a more efficient manner.").

Further, it is not the case that exhaustion is meaningless to an inmate seeking an unavailable remedy. An administrative adjudication may provide prison officials with an opportunity to halt an ongoing injury. *See Alexander v. Hawk,* 159 F.3d at 1327. Even in cases where the injury is not ongoing, an administrative adjudication in the inmate's favor provides an important step in obtaining a remedy by developing a record and decision close to the time of the injury and under conditions where the witnesses and other evidence will be readily available. *Id.* These products of the administrative process, whose benefits to the judiciary have been noted, also provide the inmate with assistance in preparing a successful federal complaint. An adjudication in an inmate's favor further aids the inmate in a later attempt to obtain damages in federal court by providing powerful evidence that the inmate's claims are not frivolous, a conclusion necessary to avoid dismissal *sua sponte* under 42 U.S.C. § 1997e(c) and under 28 U.S.C. § 1915(2) in cases where the inmate attempts to proceed *in forma pauperis.*

It is true that an inmate, given a choice, would likely not find these benefits of sufficient importance to pursue administrative remedies of his own free will. Indeed, the imposition of the exhaustion requirement will in many cases make the overall process of obtaining relief more difficult for the inmate. However, this was not an unintended effect. *See* 1995 WL 716064 (Cong.Rec.), 141 Cong.Rec. H14078–02, *H14105 (daily ed. Dec. 6, 1995) (statement of Rep. Lobiondo) ("An exhaustion requirement ... would aid in deterring frivolous claims: by raising the cost, in time/money terms, of pursuing a *Bivens* action, only those claims with a greater probability/magnitude of success would, presumably, proceed."). Further, as noted, even in cases where administrative procedures cannot provide the particular form of relief sought, they still offer sufficient benefits that exhaustion is not an "empty formality." Certainly, exhaustion is not so meaningless as to suggest that the courts should adopt a statutory construction severely at odds with the intent of Congress evident from the legislative history. *See Butcher v. Gerber Products Co.,* 8 F.Supp.2d 307, 318 (S.D.N.Y.1998) ("a reading of a statute cannot be plainly contrary to the intent of Congress.") (citing *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988)).

Accordingly, it is

ORDERED that the Report–Recommendation is APPROVED and ADOPTED in part and REJECTED in part; and it is further

ORDERED that the motion to dismiss by defendants is GRANTED; and it is further

ORDERED that Plaintiff's fourth claim, alleging a failure to protect, is DISMISSED without prejudice for failure to exhaust administrative remedies; and it is further

ORDERED that the remainder of Plaintiff's complaint is DISMISSED with prejudice, and the complaint is therefore DISMISSED in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.